## J. T. SHURLEY v. N. Y., L. E. & W. R. CO.

ERROR TO THE COURT OF COMMON PLEAS OF McKEAN COUNTY.

Argued May 1, 1888—Decided October 1, 1888.

The provisions of the Warren county act of March 28, 1868, P. L. 514, that " all railroad companies, when railroads are completed, and on which they are now running trains in said county, shall, before the first day of September, 1868, construct and keep in repair " a good and suffi-

cient fence along their tracks, etc., which act was extended to McKean county by the supplement of April 17, 1869, P. L. 1125, is applicable to a railroad company whose road was constructed through the latter county prior to the date of said original act.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 145 January Term 1887, Sup. Ct.; court below, No. 600 September Term 1881, C. P.

On September 2, 1881, an action in case was begun by John T. Shurley against The New York, Lake Erie and Western Railroad Company, to recover the value of a mare killed by a train on the defendant company's road.

At the trial on October 20, 1885, the testimony on the part of the plaintiff showed that on July 13, 1881, at Kendall Creek, McKean county, he was having a valuable mare kept at the Bradford Driving Park in training for "trials of speed." The driving park was near to the defendant company's track, thirty or fifty feet therefrom. It was the custom of the keeper to turn the mare, with other horses kept by him, into the park at night for pasture, and on the night of the date mentioned plaintiff's mare got out of the park and wandered upon the railroad track, where she was struck about midnight by an excursion train run by the defendant company, and killed. Evidence was given tending to show negligence on the part of the defendant company's employees in charge of the excursion train, but the case was made to turn upon the construction of the act of March 28, 1868, P. L. 514, entitled, An act for the protection of farmers and owners of cattle, horses, sheep and swine, along the line of railroads in the county of Warren, section 1 of which provided:

That for the protection of farmers and owners of cattle, horses, sheep and swine residing along the line of any railroad now constructed or that may hereafter be constructed in the county of Warren, all railroad companies, when railroads are completed, and on which they are now running trains in said county, shall, before the first day of September, one thousand, eight hundred and sixty-eight, construct and keep in repair, or cause to be constructed and kept in repair a good and sufficient fence at least four feet high along their tracks, except through

### Charge of Court below.

incorporated boroughs; and also construct sufficient cattle-guards at all road crossings sufficient to prevent orderly cattle, horses, sheep and swine from straying upon any railroad track in said county; and all railroads that may hereafter be constructed in said county, are hereby required to construct such cattle-guards before running trains thereon.

By the supplement of April 17, 1869, P. L. 1125, the act quoted from was extended to the counties of Bradford, McKean and Venango, and § 1 of said supplement provided:

That if any company referred to in said act shall neglect to perform the duties imposed by said act, the company so offending shall be answerable to the owners of cattle, horses, sheep or swine, to the value of the property injured upon said roads in consequence of such neglect.

It was admitted that the defendant company's road was constructed through McKean county prior to 1868.

Thomas Stanley on the stand:

Plaintiff's counsel proposes to prove by the witness that at the point where the plaintiff's horse entered upon this track, and for quite a distance either way, it was open to the public leading from the main road, about thirty rods away east from the road, and that it was not fenced and never had been fenced by the defendant, as required by the statutes.

Objected to as incompetent and irrelevant, and also for the reason that the railroad company was not bound to fence its road.

By the court: I think we will [not] let you prove it was not fenced, and if we are of the opinion that we have heretofore promulgated, on the final argument of the case, we will say that it makes no difference, and you can have the benefit of the question. We will rule against you in this and give you an exception.

Evidence was given on the part of the defendant tending to rebut the evidence of negligence adduced in the plaintiff's case.

The court, OLMSTED, P. J., charged the jury:

In the view which we take of this case, there is nothing in the case to submit to the jury, and we withdraw it from the jury. Our predecessor, and we have followed in his footsteps—

whether right or wrong, I cannot say—held that the act of
1868, passed for Warren county and subsequently extended to
the county of McKean, does not apply to the defendant com-
pany.   We have held that it was impossible that it could apply,
under the phraseology of the act of assembly.   If that did
apply to the defendant company and they were bound to keep
the road fenced, we think under its provisions the plaintiff
would be entitled to recover in this case.   But thinking as we
do, that this act does not and cannot apply, by the very terms
and language of the act, although very likely it was intended to
do so, we cannot hold that the plaintiff can recover in this case.

We think this case is ruled by the decision reported in 11th
Wright and read here by the counsel; that this plaintiff's horse
or mare strayed upon the railway; that no matter, though he
may have intended to have kept her inclosed, yet she strayed
upon the railway, and he could not recover for any injury that
was done to her in consequence of it.   She was a trespasser
on this railway, and he could not therefore recover and the de-
fendant is not liable.   I do not think there is any evidence in
the case showing such gross carelessness on the part of the
railway as makes it our duty to submit the case to the jury on
the question whether or not there was gross carelessness.

Plaintiff's points:

1. The court is requested to charge the jury that if they
believe from the evidence that the defendant's railroad was
not inclosed by a proper fence, and that the plaintiff's horse
without the fault or knowledge of plaintiff, was killed while
on said railroad by the defendant's train, that then their ver-
dict should be for the plaintiff.

Answer: Refused.[1]

2. That if the jury find from the evidence that the defend-
ant's railroad was constructed and operated as such before
March 28, 1868, and if in a reasonable time after the passage
of the act of April 17, 1869, extending the provisions of said
act of March 28, 1868, providing for the protection of farmers
and owners of cattle and horses along the line of railroads in
Warren county, was not fenced or inclosed as provided for in
said act, and that the plaintiff's horse, while on the defendant's
railroad track, by the carelessness of the agents of the defend-
ant was struck by a locomotive and killed, that then their ver-
dict must be for the plaintiff.

Answer: Refused.[2]

3. If the jury find from the evidence that the plaintiff's horse was on the defendant's railroad track, without his fault or knowledge, and was killed by being struck by one of the defendant's locomotives while passing over said railroad, and should believe from the evidence that the defendant's agents having charge of said locomotive and train could, by the exercise of ordinary diligence have avoided the accident, that then their verdict should be for the plaintiff for damages sustained.

Answer: Refused.[3]

4. If the jury believe from the evidence that at the time of the accident the train was running at a greater rate of speed than usual upon said road, that it of itself would be careless-ness and negligence upon the part of the defendant, and that their verdict should be for the plaintiff.

Answer: Refused.[4]

Defendant's point:

1. That the horse of the plaintiff was a trespasser on the track of the defendant's railroad, and there being no evidence that the injury to said horse was wantonly inflicted by the de-fendant or its agents, the plaintiff cannot recover, and the ver-dict should be for the defendant.

Answer: Affirmed.[5]

We think that the plaintiff cannot recover and we negative the points that have been presented by the plaintiff's counsel and affirm the point presented by the defendants' counsel, and direct the clerk to enter your verdict in favor of the defend-ant.   If we are wrong we will be corrected by the court above us.

The jury returned a verdict for the defendant, and judg-ment having been entered thereon, the plaintiff took this writ assigning as error:

1–4. The answers to the plaintiff's points.[1 to 4]

5. The answer to the defendant's point.[5]

*Mr. W. B. Chapman* (with him *Mr. Jno. B. Chapman*), for the plaintiff in error:

1. A statute is to be construed by the same rules as we would construe a contract or a will, and the rule by which they are to

be construed is, to take the whole instrument and compare each paragraph with the other, and thus arrive at the intention of the parties or of the legislature: Kent's Com., 7th ed., 462* ; United States v. Foster, 2 Cranch 358 ; Deddrick v. Wood, 15 Pa. 12. "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers ; and such construction ought to be put upon it as does not suffer it to be eluded :" Holmes v. Carley, 31 N. Y. 289. Statutes are to be construed so as best to effectuate the intention of the makers : Big Black Creek Imp. Co. v. Common-wealth, 94 Pa. 450 ; and in case of irreconcilable repugnancy, the last part of the statute is taken to express the legislative intention : Packer v. Railroad Co., 19 Pa. 211.

2. The words of the act of 1868, " all railroad companies, when railroads are completed, and on which they are now running trains in said county, shall, before the first day of September, 1868, construct and keep in repair, etc., a good and sufficient fence," etc., simply limit the time when the act shall take effect, like a proviso that, as to roads then constructed, said act shall not take effect until that date. And the words are to be read in connection with § 2 of the act. Until the first day of September, the company had the exclusive right to construct the fences ; after that, the adjoining landholder had the right to construct the fence, at the cost of the company. Moreover, the supplementary act of 1869, provided : " That if any company referred to by said (original) act shall neglect to perform the duties imposed by this act, the company so offending shall be answerable," etc., thinking, not of the past, but of the future.

*Mr. M. F. Elliott* (with him *Mr. D. H. Jack*), for the defendant in error :

1. Acts of parliament that are impossible to be performed are of no validity: 1 Bl. Com., 90. When a statute is clear and explicit, and its provisions are susceptible of one interpretation, its consequences, if evil, can only be avoided by a change of the law itself : Philadelphia v. Ridge Ave. Ry. Co., 102 Pa. 195 ; Johnson v. Railroad Co., 49 N. Y. 455 ; Benton v. McKenzie, 54 N. Y. 226.

2. By the terms of the act of 1868, all the railroads in Warren county which had been constructed prior to the passage of the act, to wit, March 28, 1868, were required to be fenced before September 1st of the same year. The supplement, extending the provisions of the act to McKean county, was approved April 17, 1869, and so far as the latter county is concerned, the act of 1868 is to be construed as though it had been approved on the last mentioned date. Thus we have a law which went into effect April 17, 1869, requiring all railway companies, which previous to that date had constructed their railroads, to fence their tracks before September 1, 1868. As to defendant's railroad the act of assembly could not be obeyed, and it was therefore void.

OPINION, MR. CHIEF JUSTICE GORDON :

This was an action on the case, brought by the plaintiff, John T. Shurley, against the New York, Lake Erie and Western Railroad Company, to recover damages for the killing, by one of the trains of said company, of a brown mare of the said plaintiff on the night of July 13, 1881. It appears from the evidence that this mare escaped from a driving park where she was pasturing, and wandered on the track of the defendant's road where she was struck and killed, as already stated, by a passing train.

Without regard to any other question, the case was ruled in the court below against the plaintiff on the defendant's first point, which is as follows : " That the horse of the plaintiff was a trespasser on the track of the defendant's railroad, and there being no evidence that the injury to said horse was wantonly inflicted by the defendant or its agents, the plaintiff cannot recover and the verdict should be for the defendant." There was also an offer to prove, on part of the plaintiff, that at the point where the horse entered on the track the ground was open for some distance either way to the public, and had not been fenced by the defendant company as required by the act of assembly. This offer was overruled, and the case was taken from the jury and ruled against the plaintiff, solely on the ground that the act of March 28, 1868, P. L. 514, did not apply to the defendant company. In thus ruling we think the court committed an error.

By that act, which includes the county of Warren only, all railroads then constructed or thereafter to be constructed in said county, were to be fenced and guarded as therein prescribed. This is plain enough, but the stumbling block seems to be in the provision that "all railroad companies, when railroads are completed, and on which they are now running trains in said county, shall, before the first day of September, one thousand eight hundred and sixty-eight, construct and keep in repair or cause to be constructed and kept in repair, a good and sufficient fence, at least four feet high, along their track, except through incorporated boroughs; . . . . . and all railroads that may hereafter be constructed in said county, are hereby required to construct such cattle guards before running their trains thereon." This act, by a supplement of April 17, 1869, P. L. 1125, was extended to the counties of Bradford, McKean and Venango, with this further provision: "That if any companies referred to in said act shall neglect to perform the duties imposed by said act, the company so offending shall be answerable to the owners of cattle, horses, sheep or swine to the value of the property injured upon said roads in consequence of such neglect." Now, as the road of the defendant was built and in operation in the county of McKean before the passage of the above recited supplement, and as it, the said supplement, must be construed as though it were approved on the 28th of March, 1868, the date of the original act, it is clear that the provision requiring the fencing of roads before the 1st of September, 1868, could not apply to the defendant company, and the court below therefore held that it was not bound by any of the provisions of the statute. With this conclusion of the learned judge we cannot agree. All railroads whether built or to be built were required to be fenced, and the other prescription was merely a matter of time. Roads then completed, "and on which they are running trains," must be fenced before the first of September, and those afterwards constructed must be guarded in a similar manner before running trains thereon. It thus seems to us obvious that the intention of the framers of the act was merely to give companies which were then operating their roads a reasonable time within which to comply with its provisions, and to avoid all dispute they fixed what should be regarded as a reasonable time.

We can readily suppose a case where the very literal construction put upon this statute by the court below, would wholly defeat the operation of the original act even in its application to the county of Warren. The prescribed period within which cattle guards were to be erected applied only to railroads then constructed, " *and on which they are now running trains ;* " whilst the other prescription applies only to railroads " that may hereafter be constructed," and companies owning them were required to guard them before running trains thereon. But what of roads which, though fully completed at the time of the passage of the act, had as yet no trains running on them? Were there such a case, would anyone contend that the company was wholly exempt from the operation of the statute? We think not. The main purpose of the act was to protect the property of the citizen, and the time given within which to fence was a matter of grace to the railroad companies. It follows, that the intention of the legislature was to compel all railroads, on which trains were being run, to be guarded, and to visit the companies owning them with the cost of doing that which they might neglect to do.

Having thus shown the immateriality of time as it appears in the original act; that it was given as a convenience and indulgence, and not as an essential to the force and validity of the statute itself, we may inquire, if time was not essential in the original act, how does it become so in the supplement where it is wholly insensible and means nothing? If in the former it did not defeat the principal intent, how can it do so in the latter? These are questions which seem to us unanswerable, and which the court below did not consider. If in the original act the time mentioned, September 1, 1868, be stricken out, its main prescription is not in the least affected. Railroad companies are still required to fence and guard their tracks, as well those already constructed as those to be constructed, and the only difference made by the act as it now stands is that the former must have a reasonable time within which to comply with that prescription. Unquestionably then, a proviso which, when operative, did not affect the spirit and intent of the act, cannot be made to do so when it has become inoperative. Whilst, therefore, it is quite possible that the facts of this case may not be sufficient to sustain the plaintiff's case,

yet he must have an opportunity of presenting them so that they may be passed upon in a regular manner.

The judgment is reversed and a new venire ordered.