# Commonwealth *v.* Wilson Female College, Appellant.

*Road law—Boroughs—Vacation of street—Turnpike companies.*

A borough has authority to vacate a highway wholly within its limits although such highway was not laid out by the corporate authorities of the borough, but was originally laid out and afterwards legally abandoned by a turnpike company. Such authority may be found in secs. 2 and 27 of the General Borough Law of April 3, 1851, P. L. 320, and may be exercised where the terminus of the borough street is coincident with the terminus of a turnpike road.

Argued Oct. 19, 1909. Appeal, No. 201, Oct. T., 1909, by defendant, from judgment of Q. S. Franklin Co., April Sessions, 1909, No. 33, on verdict of guilty in case of Commonwealth v. Wilson Female College. Before Rice, P. J., Henderson, Morrison, Orlady, Beaver and Porter, JJ. Reversed.

Indictment for nuisance. Before Gillan, P. J.

The opinion of the Superior Court states the facts.

The court gave binding instructions for the commonwealth.

Verdict of guilty upon which judgment of sentence was passed.

*Error assigned* was in giving binding instructions for the commonwealth.

*Walter K. Sharpe,* with him *Irvin C. Elder,* for appellant.— Since the Act of April 3, 1851, P. L. 320, the court of quarter sessions has no jurisdiction over a public road which lies wholly within the borders of two adjoining boroughs, West Liberty and Knoxville Roads, 20 Pa. Superior Ct. 586.

The policy of legislation in Pennsylvania relating to boroughs is to subject the highways in them to the control of their municipal authorities as exclusively as is consistent with the duty of affording protection to citizens. The general borough laws indicate the legislative intent to secure uniformity of plan and adequate municipal protection in the

establishment and maintenance of borough highways: Norwegian St., 81 Pa. 349; South Chester Rd., 80 Pa. 370; Parkesburg Borough Sts., 124 Pa. 511; Commonwealth's App., 9 Atl. Repr. 524.

*Charles Walter* and *O. C. Bowers,* with them *D. Edward Long,* district attorney, and *Arthur W. Gillan,* for appellee.— For the obstruction of the turnpike an indictment will lie: McManus's App., 5 Pa. Superior Ct. 65; Northern Central Ry. Co. v. Com., 90 Pa. 300; Lancaster Turnpike Co. v. Rodgers, 2 Pa. 114.

Power to vacate a road extending from a point within to a point without the borough is in the quarter sessions and not the borough councils: Palo Alto Rd., 160 Pa. 104; Somerset & Stoystown Rd., 74 Pa. 61.

OPINION BY RICE, P. J., April 18, 1910:

The highway, for the obstruction of which the defendant was indicted and convicted, lies wholly within the borough of Chambersburg. It was originally a part of a turnpike extending from Harrisburg to the Diamond or Public Square in Chambersburg, which, by authority of a charter granted in 1814, the Harrisburg, Carlisle and Chambersburg Turnpike Company constructed and maintained.

In 1904, pursuant to permission given, and in the mode prescribed, in the special act of February 28, 1861, to this and certain other turnpike companies, "to abandon, surrender and relinquish to the public so much of their respective roads as lie within the limits of Chambersburg," this company abandoned, surrendered and relinquished that portion of its turnpike situate within the limits of the borough. The managers of the turnpike company evidently intended, so far as it was within their power to do so, to transfer the complete control of the street to the borough, for it appears that their resolution was, not only to "abandon, surrender and relinquish to the public," but to "release to the borough of Chambersburg" so much of its turnpike road as lay within the limits of the borough. It is not clear that the addition

of the words "release to the borough," which do not appear in the statute, gave the action of the company a different effect, so far as the question before us is concerned, from what it would have had if they had been omitted, but it is proper to allude to the fact as part of the history of the case.

In 1905, by ordinances and proceedings, the regularity of which is not questioned, the borough ordered the vacation and closing of a section of that part of the highway—this section being about 1,000 feet in length and ending at the then borough line. Beyond that point, the highway continued to be maintained by the turnpike company as a turnpike upon which tolls are collected. The obstructions complained of in the indictment were erected by the defendant (a corporation owning most of the abutting land) within the lines of the portion of the turnpike abandoned by the company and vacated and closed to public use by the borough ordinances above referred to.

One of the important facts admitted on the trial was, that for many years prior to the passage of these ordinances the part of the turnpike road within the borough was known as Philadelphia avenue, and the authorities of the borough "exercised control over it by from time to time changing the grades of certain portions thereof and performing the work incident to such change of grade, and by requiring property owners along the same to make and repair pavements, curbs and gutters, and generally exercising such control over it as they did over other streets of the borough, including the granting thereon of franchises for public service corporations."

We need not recite the facts relative to the highways provided by the borough to take the place of that vacated; for as we view the case, and as it is presented by counsel, the question is, whether the enactment of the ordinances was beyond the corporate power of a borough subject to the general borough law, not whether the ordinances are void for unreasonableness or abuse of discretion.

That a turnpike laid out and maintained by a corporation chartered for the purpose is a public highway, and that upon the legal abandonment of a portion of it by the corporation,

such portion continues to be a public highway, are propositions about which there can be no dispute. But it does not aid much in the disposition of the question before us to show that Philadelphia avenue continued to be a public highway after the abandonment of that portion of its turnpike by the company, for that could be said of any street laid out by the corporate authorities of a borough and beginning and ending within its limits. Nor can it be said that a borough has no authority to vacate a highway wholly within its limits, which was not laid out by the corporate authorities of the borough but was originally laid out and afterwards legally abandoned by a turnpike company. This, we think, was impliedly decided in Commonwealth's App., 9 Atl. Repr. 524. The syllabus of the case is as follows: "The town council of a borough has the right to open a street laid down in the general plan of the town, even if, in doing so, it will necessarily and unavoidably close up and obstruct another highway not laid down in the town plan, but which has become a highway by having been the bed of an artificial road belonging to a turnpike company, which, on being abandoned by the company, became a public road under the general laws of Pennsylvania." That this was the point intended to be decided in that case by the learned judge below is apparent from his statement of the question involved; and it is difficult to see how the decision could be made that the borough could actually obstruct and close up a public road which it had no power to vacate by an ordinance duly enacted. Indeed, judging from the reported abstract of the argument of counsel for the commonwealth, their contention was that the power must be exercised by ordinance to vacate, not that the borough did not have the power. So far as the report of the case shows, neither counsel nor the courts intimated that the mere fact that the street was originally laid out and opened and afterwards legally abandoned by a turnpike company would prevent the application of the law as laid down in Osage Street, 90 Pa. 114. But, treating the question as a new one, is the fact last alluded to conclusive against the power of the borough? Section 2 of the Act of April 3, 1851, P. L. 320, enu-

merating the powers of the corporate officers of a borough, does not in so many words declare that they shall have power to vacate, but in clause II the power is expressly given "to survey, lay out, enact, and ordain such roads, streets, lanes, alleys, courts and common sewers as they may deem necessary," and in clause IV, they are empowered "to regulate the roads, streets, lanes, alleys, courts . . . . and the . . . . grades, widths, slopes, and forms thereof; and," the clause concludes, "they shall have all other needful jurisdiction over the same." Construing the latter provision in connection with the provisions of sec. 27 fixing the time when and the terms and forms on and in which the court shall have the right to intervene, the court reached the conclusion in the case last cited, that the quarter sessions had not and the borough had original jurisdiction in the vacation of the street then under consideration. Justice WARREN J. WOODWARD, speaking for the court said: "The words 'to vacate' in the second clause of the proviso are to be read in connection with the rest of the third clause of the 27th section, as well as in connection with the second and fourth clauses of the 2d section. The vacation of a street was as much in contemplation as the laying out and opening of a street when the legislature made provision of means by which the proceedings of the council should be revised. The words cannot be relegated to the act of 1846, and read into that, in order to give them efficiency, nor can they be stricken out. As they stand, they are aids to indicate the scope and purpose of the Act of 1851 in an unmistakable way." It is true that in that case the street had been dedicated to public use by the owner of the land, and adopted by the borough, but the decision was not put on that ground, and the reasoning of the opinion is entirely inconsistent with the supposition that the power of a borough to vacate is confined to dedicated streets, or to streets originally laid out by the borough. Nor would such supposition be consistent with the general principles to be had in view in the construction of statutes relating to city and borough streets. Upon this subject the court said: "The adjustment of a city or borough plan requires scientific

knowledge, a pervading system thoroughly understood by official agents, and familiarity with diversified and minute details. The vacation of a single street could be at a point so vital as to derange the graduation, drainage and sewerage of an entire borough. Legislation should be very clear indeed to require that the health, convenience and comfort of a whole community should be put to the hazard of the action of six gentlemen casually selected from country townships, adjacent to a town, to deal with an isolated detail of a system which they could touch only to injure and perhaps destroy." This is in line with the general doctrine enunciated in Norwegian Street, 81 Pa. 349, that the general legislative intent has been to secure uniformity of plan and adequate municipal supervision in respect to borough highways, and to that end to subject them to the control of the municipal authorities as exclusively as is consistent with the duty of affording protection to interests of individual citizens. But it is well settled by authoritative decisions, that there are highways over which boroughs do not have exclusive jurisdiction, even as to parts within their limits. In Somerset and Stoystown Road, 74 Pa. 61, the proceeding was in the quarter sessions to widen a portion of a road laid out by public authority from Somerset borough to the borough of Stoystown. The portion proposed to be widened was partly in the borough of Somerset and partly in the adjoining township. Objection was made that the portion within the borough was subject exclusively to the control and regulation of the borough authorities. But it was held that the quarter sessions had jurisdiction. We call particular attention to some of the considerations mentioned in the opinion of SHARSWOOD, J., sustaining the conclusion, and remark that they do not apply here, for it is clear that the court of quarter sessions had no jurisdiction to vacate the part of the highway outside the limits of the borough of Chambersburg.

Palo Alto Road, 160 Pa. 104, is a similar case, except that the proceeding was to vacate, and it was held that the quarter sessions had jurisdiction. The same doctrine is held in later cases of a similar character. Speaking in the former case

of the provisions of the acts of 1851 and 1856, SHARSWOOD, J., said: "But by streets and alleys 'therein'—that is, within the borough limits—must necessarily be meant such as begin and end therein, and not such public roads as are or may be opened through the borough, of which a part only is within the borough limits. As to such roads there is nothing in either of these acts to repeal the general law or repugnant to it." It is strongly urged that this construction is conclusive against the power of the borough to vacate Pennsylvania avenue. This involves the assumption that it does not end in the borough; but we are not convinced of the correctness of that assumption. The question whether in a legal sense the street began and ended in the borough, or, conversely, whether the highway with which it connected began outside and ended within the borough, is to be determined as of the time when the ordinances were adopted. At that time there had been a legal severance of Pennsylvania avenue from the turnpike. It is true, both were highways and the terminus of each at the borough line was coincident with that of the other, but this would be equally true, if they had been laid out at different times and under different proceedings. None of the cases cited decide and the reasoning of the cases does not lead to the conclusion, that the mere fact of coincidence of termini is sufficient to give the quarter sessions exclusive jurisdiction to vacate a borough street so situated. On the contrary, the doctrine of Osage street sustains the conclusion that the corporate officers of the borough have power to vacate it.

We have given due consideration to the able and exhaustive opinion of the learned trial judge and to the able argument of the commonwealth's counsel, but we are, nevertheless, constrained to hold that the defendant's point for binding direction should have been affirmed.

The judgment is reversed and the defendant is discharged.