# McCall *v.* The Delaware, Lackawanna & Western R. R. Co. and Borough of Duryea, Appellants.

*Boroughs—Roads and streets—Borough council—Jurisdiction.*

1. A borough council has authority to change, by ordinance, the location of a main highway, which is also a street of the borough, and to vacate that portion of the same, which is rendered useless by such change where the whole of the vacated street is within the limits of the municipality.

2. While a borough council has no authority to obstruct a main highway running through the borough, there is nothing to prevent its changing the location of a part of such highway which is entirely within its limits, where such change does not interrupt or destroy the continuity of the highway, but merely for safety or

convenience substitutes a better or safer road for a dangerous and unsafe one.

3. The borough council has concurrent jurisdiction with the court of quarter sessions as to the improvement of so much of such a highway as lies within the borough.

Argued March 3, 1919. Appeals, Nos. 8 and 11, March T., 1919, by defendants, from judgment of C. P. Luzerne Co., March T., 1914, No. 571, on verdict for plaintiff in case of Mary McCall v. The Delaware, Lackawanna & Western Railroad Company and Borough of Duryea. Before ORLADY, P. J., PORTER, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Trespass to recover damages to real estate caused by vacation of street. Before WOODWARD, J.

The facts are stated in the opinion of the Superior Court.

Verdict for $1,500 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were refusal to grant new trial and refusal to enter judgment for defendants n. o. v.

*J. H. Oliver,* and with him *B. R. Jones* and *Evan C. Jones,* for appellants.—The borough council had jurisdiction as the road was wholly within the borough limits and the change did not affect the continuity of the highway: Act of May 16, 1891, Section 9, P. L. 75, and amendments; Act of March 19, 1903, P. L. 35; Act of June 7, 1901, Section 6, P. L. 531; Penna. Railroad v. Bogert, 209 Pa. 589; D., L. & W. R. R. Co. v. Luzerne County, etc., 241 Pa. 83.

Any remedy is statutory and not by action in trespass: Dempsey v. Devers, 43 Pa. Superior Ct. 193; Peterson v. Wiggins, 230 Pa. 631; Smith v. Roydhouse, etc., and Co., 244 Pa. 474.

*John T. Lenahan,* and with him *Edward A. Lynch,* for appellee.—The borough council could not, by ordinance, change the location of the street: Curtis v. The Railroad, 250 Pa. 480; Somerset and Stoystown Road, 74 Pa. 61; Palo Alto Road, 160 Pa. 104; Warner v. Coatesville Boro., 231 Pa. 141.

The ordinance was invalid: Commonwealth v. Kelley, 250 Pa. 18; Philadelphia Company v. Pittsburgh, 253 Pa. 152; Carpenter v. Yeaden Boro., 208 Pa. 396; Taylor Ave., 146 Pa. 638.

OPINION BY KELLER, J., April 21, 1919:

The real point involved in this appeal is the right of the Borough of Duryea, by ordinance, to change the location of a portion of Main street, in order to avoid a railroad crossing at grade, and vacate the part rendered useless by such change, the said street having been, prior to the incorporation of the borough, part of the public road leading from Wilkes-Barre to Scranton. All of the vacated portion of Main street as well as of the newly laid out Main street is admittedly within the Borough of Duryea, and the street extends some distance on both sides of the change or improvement before reaching the borough limits. As existing before the change, Main street crossed the tracks of the Delaware, Lackawanna and Western Railroad Company, at grade, and, a short distance beyond, went under the tracks of the Lehigh Valley Railroad Company. The street car line of the Wilkes-Barre Railway Company was laid longitudinally on Main street and in consequence also crossed the D., L. & W. tracks, at grade. It was the desire of the borough, as well as of the railroad and railway companies, to do away with this dangerous grade crossing and substitute an overhead crossing for it; but, by reason of the engineering difficulties present in consequence of the street passing under the Lehigh Valley tracks a short distance beyond, it was found to be impracticable to construct the overhead

crossing directly on the old location of Main street; but, by raising the grade of Main street and changing its location for a short distance and having it cross the tracks about one hundred and fifty feet to the east of the old crossing, an overhead crossing was entirely practicable, without interfering with the passage under the Lehigh Valley tracks, and, at the same time, permitted the vacation of the Phœnix street grade crossing about fifty feet still further east. Accordingly, in pursuance of arrangements made between the officials of the borough and the two interested companies, an ordinance was prepared, providing for the changes above outlined, viz: the laying out of the new Main street at the new overhead crossing, and changing the grade of the street so as to bring it above the tracks, the vacation of so much of the street as crossed the D., L. & W. tracks at grade, and the laying out of a new roadway, so as to permit access from Main street immediately east of the vacated crossing to the rest of the street at its new grade. By the terms of the ordinance, the cost or expense of constructing the streets and the overhead bridge was to be paid by the railroad company and the railway company, and the borough assumed the payment of all damages on account of injury to real estate occasioned by the change of grade, the laying out of the new street and the vacation of the grade crossing, and appropriated the land necessary for the purposes of said ordinance. The ordinance was passed and approved on September 25, 1912, and work was begun early in June, 1913. On September 4, 1913, after the work of raising the grade of Main street and building the necessary abutments for the overhead bridge had progressed considerably, Charles Harrup and wife conveyed to the plaintiff, their adopted daughter, an acre of land, with buildings on it, north of the D., L. & W. railroad and west of Main street, a short distance from where it crossed the railroad tracks at grade. A private road or way, extending from the

track to Main street, gave the buildings on the tract access to the street.

On February 17, 1914, the plaintiff brought this action in trespass against the railroad company and the borough jointly, and in her amended statement charged the railroad company with obstructing the public highway from Wilkes-Barre to Scranton, by a change or fill near the point where her private way had access to said highway, and the borough with jointly contributing in such obstruction. The learned judge before whom the case was tried was of the opinion that, under the decision of the Supreme Court in Curtis v. R. R. Co., 250 Pa. 480, the ordinance was void, for the reason that the street was a "through highway, running between points beyond the confines of the Borough of Duryea, and not wholly within the borough," and that consequently the borough and the railroad company were joint trespassers, and so charged the jury, and subsequently refused the defendants' motion for judgment non obstante veredicto on the same ground. Was this action justified by the decision relied upon and the other decisions of the Supreme Court, under the evidence in the case?

In Curtis v. R. R. Co., supra, the plaintiff, who was the owner of three pieces of real estate in Connellsville Borough, brought suit against the defendant railroad company for constructing an embankment blocking the public road from Connellsville to Vanderbilt (known in the borough as Torrence avenue) and materially interfering with his access to and egress from his properties and effectually blocking several streets and alleys upon which they abutted, and injuring their market value. While it was admitted that Torrence avenue had been vacated at that point by borough ordinance, there was nothing in the case as reported to show that the avenue had been changed or relocated so as to preserve its continuity as a public road, and it seems to have been effectually blocked at the railroad embankment. The Supreme Court, Mr. Justice MOSCHZISKER delivering

the opinion, held that, if Torrence avenue was a con-
tinuous public highway leading through the neighbor-
ing country into and out of the Borough of Connells-
ville, and not simply and exclusively a road within the
confines of the borough, the jurisdiction to vacate a
part thereof in the borough was not in the municipal
authorities, but in the court of quarter sessions, citing:
Somerset and Stoystown Road, 74 Pa. 61; Palo Alto
Road, 160 Pa. 104; Warner v. Coatesville Boro., 231
Pa. 141; St. David's Church v. Sayen, 244 Pa. 300; and
that the lower court had erred in entering a nonsuit.
The authorities cited unquestionably sustain the action
of the court, under the facts in that case. No borough
has authority, by vacating a portion of one of its streets,
forming part of a long-established highway leading to
other localities, to block or destroy the continuity of
such highway. The people at large and outside of the
borough have such an interest in the highway as to de-
mand that no part of it be cut out or vacated without
the assent of a court and jury of view; but does such a
rule hold as to internal improvements wholly within
the borough, which do not injure nor destroy the con-
tinuity of the highway, but, merely for safety or con-
venience, change or substitute a better and safer section
for a short distance as a part of the street or highway,
instead of a dangerous and unsafe one?

In considering the question, two pronouncements of
the Supreme Court must be kept in mind: "It has been
the policy of all the recent legislation relating to the
boroughs of the Commonwealth to subject the highways
within their limits to the control of the municipal au-
thorities as exclusively as was consistent with the duty
of affording protection to the interests of individual
citizens": Mr. Justice WOODWARD in Norwegian Street,
81 Pa. 349, p. 352; and: "This controversy grows out
of the efforts made by the borough authorities in con-
nection with the railroad company to eliminate grade
crossings by substituting at the cost of the railroad

company subways therefor. As a protection to the public and as a means of avoiding the dangers incident to their use, the abolition of grade crossings is insisted upon by the courts in all cases where the conditions are such as to make it practicable to eliminate them. When, therefore, the local authorities undertake in the interest of the public to do that which the law favors, courts should not be astute to seize upon technical refinements in order to defeat such a worthy purpose": Mr. Justice ELKIN in Warner v. Coatesville Boro., 231 Pa. 141, pp. 149, 150.

The case at the very foundation of the position taken by the appellee, the cornerstone upon which is built the whole structure supporting it, is Somerset and Stoystown Road, 74 Pa. 61. In that case, a petition was presented to the Court of Quarter Sessions of Somerset County for the appointment of viewers to widen and straighten the public road leading from Somerset to Stoystown, from a point within Somerset Borough to a point without, in Somerset Township. Viewers were appointed, who reported in favor of widening and straightening the road. Exceptions were filed to their report: (1) That the court of quarter sessions had no jurisdiction; (2) that the burgess and council had exclusive jurisdiction as to the portion within the borough. It will thus be seen that the question before the court was not whether the Court of Quarter Sessions had exclusive jurisdiction of the part of the road within the borough, but whether it had jurisdiction at all, and, as a corollary to this, whether the burgess and town council had exclusive control and regulation of so much of the road as was within its limits, or shared this regulatory control with the quarter sessions where the improvement began within and ended without the borough. Mr. Justice SHARSWOOD, in upholding the latter view, said: "It may be, therefore, and there is great reason to hold, that as to streets and alleys within the limits of the borough, to which the Acts of 1851 (April 3, 1851, P. L.

320), and 1856 (April 22, 1856, P. L. 525), are confined, the provisions of these acts supersede and repeal so much of the General Road Law as they supply.   But by streets and alleys 'therein'—that is, within the borough limits—must necessarily be meant such as begin and end therein, and not such public roads as are or may be open through the borough, of which a part only is within the borough limits.   As to such roads, there is nothing in either of these acts to repeal the general law or repugnant to it.   Most of the boroughs have had their beginnings by a few houses built along some public road, and not unfrequently where two roads cross each other.   In laying out and opening such a road between distant termini, though it may be laid out through a borough, or in widening and straightening one already laid out and opened, to require that as to the part within the borough one proceeding shall be followed, and as to so much as lies without, another and different proceeding, would be to introduce unnecessary complication. Besides, a public road laid out and opened by order of the court under the General Road Law must be presumed necessary for the accommodation of the public at large, and not of the inhabitants of the borough only; yet if the construction now contended for prevail, such a road under the Acts of 1851 and 1856 could not be laid out through a borough without the concurrence of the borough authorities."   It is true that the sixth syllabus of the report reads: "The borough law as to streets, etc., does not apply to public roads through a borough of which only a part is within the borough limits," but if it is intended thereby to mean that the borough authorities have no regulatory control over such a street, it is not supported by the opinion and is probably responsible for much of the misconception which has prevailed on this subject.   The case only decides that, where it is desired to improve or change a section of such a through road from a point within to a point without a borough, the quarter sessions has

jurisdiction of the whole change or improvement, to prevent unnecessary complication; but it nowhere holds that, if a borough, at its own expense, desires to widen or straighten or otherwise improve a section of such road wholly within its limits, and in such a way as not to interfere with the accommodation of the people at large, it has no such power or authority. There is certainly nothing in the law to forbid a borough opening a new street to the borough limits, and the court of quarter sessions afterwards opening a road in the adjoining township, connecting with and continuing such street; but it is more convenient to do it in one proceeding.

The General Borough Act of April 3, 1851, P. L. 320, gave power to the corporation: "To survey, lay out, enact and ordain such roads, streets, lanes, alleys, courts and common sewers as they may deem necessary, and to provide for, enact and ordain the widening and straightening of the same." (Section 2, paragraph II.) "To regulate the roads, streets, lanes, alleys, courts, common sewers, public squares, common grounds, foot walks, pavements, gutters, culverts and drains, and the heights, grades, widths, slopes and forms thereof; and they shall have all other needful jurisdiction over the same." (Section 2, paragraph IV.) It will be noted that the word "therein," upon which stress is laid in the opinion of Justice SHARSWOOD, is not contained in the sections of the Act of 1851 giving these powers to the corporate authorities. It is found only in the Act of April 22, 1856, P. L. 525, providing for the assessment of damages for the opening or widening of streets under the Act of 1851, and it will be remembered that, until the Acts of May 28, 1913, P. L. 368, and June 27, 1913, P. L. 633, damages were not allowed for the vacation of streets: Howell v. Morrisville Boro., 212 Pa. 349; so that the Act of 1856 did not apply to such vacation. The words relating to the general regulatory powers of boroughs over their streets, in paragraph IV, the establishment of foot walks, pavements, gutters, culverts and drains, are

the same as are used in paragraph II, relative to the laying out and widening and straightening of roads, streets, etc. If a borough had no jurisdiction over the widening or straightening of so much of one of its streets as lay wholly within its limits because it happened to form part of a through road, then it had no regulatory or police power over such street, because the language of paragraph IV is no stronger or more inclusive than that of paragraph II. Who, then, would have power to ordain pavements, foot walks, gutters, etc., or enact regulations along such a through road, within the borough limits? The query answers itself. The borough has these powers, and it has the power to widen and straighten or otherwise improve any of its streets, whether through roads or not, so long, with respect to through roads, as it does not thereby interfere with the "accommodation of the public at large"; but, coincident with this power, the court of quarter sessions has jurisdiction where the proposal is to improve a section of such a road extending from a point within to a point without the borough, and where it acts positively, its authority is supreme, and the borough authorities cannot undo what it orders to be done, as the court of quarter sessions has supervisory powers over borough ordinances. (Act of 1851, Section 27, paragraph II.) It must be remembered, however, that there is a difference in the payment of land damages under the two methods; if by proceedings in the quarter sessions, the county pays the damages for the land taken; if the borough acts, it must pay them: Parkesburg Borough Streets, 124 Pa. 511. It might well be that the court and a jury of view, on the objection of county commissioners, might consider the cost to the county of widening a stretch of road extending from within a borough to a point without to be too great to justify the expense and refuse to make the improvement. This certainly would not prevent the borough from widening so much of the road as was wholly within its

own limits, if it was desirous of doing so and willing to pay the entire expense.

This case was followed by South Chester Road, 80 Pa. 370, in which it was held that the court of quarter sessions did not have jurisdiction to lay out a road wholly within the Borough of South Chester, though it was a continuation from the borough line of a street or road in the City of Chester. And In re Vacation of Osage Street, 90 Pa. 114, it was held that, when a street has been laid out and dedicated to public use in a borough, the court of quarter sessions has no power to vacate said street, and that such power is vested in the borough alone under its regulatory powers, Section 2, paragraph IV. In that case, Mr. Justice WOODWARD said: "Legislation should be very clear indeed to require that the health, convenience and comfort of a whole community should be put to the hazard of the action of six [now three] gentlemen casually selected from county townships adjacent to a town to deal with an isolated detail of a system which they could touch only to injure and perhaps destroy" (p. 117). A long line of cases has followed these decisions, recognizing on the one hand the exclusive jurisdiction of the authorities of a borough over the opening, widening or vacating of a street wholly within the borough limits: West Liberty & Knoxville Roads, 20 Pa. Superior Ct. 586; even though it originally formed part of a turnpike, but the portion within the borough had been abandoned by the turnpike company and thereafter maintained by the borough: Commonwealth's App., 9 Atl. 524; Commonwealth v. Reed, 6 Sadler 402; Commonwealth v. Wilson College, 42 Pa. Superior Ct. 419; and on the other, the jurisdiction, not exclusive however, of the court of quarter sessions, where the proposed change or improvement was partly within and partly without the borough: Road in Cassville Borough, 4 Pa. Superior Ct. 511; In re Road in Verona Borough, 21 W. N. C. 534.

The construction of the Acts of 1836 and 1851, herein presented, was recognized in Parkesburg Borough Streets, 124 Pa. 511, where it was said, Mr. Justice CLARK delivering the opinion: "Whilst the exclusive power of the authorities of a borough to enact and ordain streets, alleys, etc., under the Act of 1851, is undoubted, by streets, alleys, etc., 'therein' [Note: This word does not appear in the Act of 1851 in connection with these powers] is meant such only as begin and end within the limits of the municipality. This exclusive provision does not extend to public roads, laid out through or to a point within the limits of a borough, of which only a part is within the borough lines. The court of quarter sessions has undoubted authority in such cases under the General Road Law of 1836...... Thus it is apparent that, whilst under the Act of 1851, the corporate authorities have exclusive power to lay out, enact and ordain streets, etc., within the corporate limits, the county, or the State rather, through the instrumentality of the quarter sessions, may still proceed, under the Act of 1836, to lay out and open roads through or into any part of any borough for public use."

In Palo Alto Road, 160 Pa. 104, a petition to vacate a short piece of road or street in Palo Alto Borough was presented to the court of quarter sessions, in order to do away with a dangerous grade crossing. The road had been laid out before the incorporation of the borough and was a through highway. Part of the road, a bridge partly in Palo Alto Borough and partly in Pottsville Borough adjoining, had recently been vacated, and the part now desired to be vacated adjoined the bridge on the Palo Alto side. The exceptants claimed that, because the bridge had been vacated, the court had no jurisdiction over the remaining street. The court, BECHTEL, J., said: "No one ever questioned the jurisdiction of the court when we had before us the report vacating the old bridge and opening the new bridge and its approaches. If we had jurisdiction then, we feel con-

fident we have now, for had that report vacated 150 feet more than it did, it would have included the part now in question, and no possible question of jurisdiction could have arisen." Referring to the case of Somerset and Stoystown Road, 74 Pa. 61, Judge BECHTEL goes on to say: "It was decided that, as one of the termini was beyond the borough limits, the jurisdiction was in the court, although the other of the termini was within the borough." The court below, therefore, in an opinion approved by the Supreme Court, held that the court had jurisdiction; but there is not a line in the opinion that intimates that the borough did not possess the power to vacate this small stretch of street if it had desired to do so and was willing to pay the damages. The borough was not objecting to the jurisdiction of the court, but joined in desiring and urging the vacation. The first syllabus in this case correctly summarizes the opinion: "The exclusive power of the authorities of a borough to regulate roads, streets, alleys, etc., under the Act of April 3, 1851, P. L. 320, does not extend to public roads laid out to a point within the borough limits where only a part of the road is within the borough." The case does not decide that the borough did not have the power to vacate this stretch of road, but only that the court of quarter sessions did have such jurisdiction. It does not hold that the jurisdiction in either was exclusive.

Gilmore v. Borough of Connellsville, 15 W. N. C. 342, was a case where, by mere resolution, not ordinance, of council, the borough attempted to widen a portion of a street forming part of an old-established through highway, known as Lobengier's Mill Road. Gilmore, whose fence was forcibly set back by the borough's agents, filed a petition in the court of quarter sessions for restoration of his premises and an issue to assess damages. The right of the borough to widen the street by ordinance under the Act of 1851 was not disputed, but it was held that, not having done so, the act complained of was a mere trespass, for which the plaintiff had his

common law action.   In Rothwell v. California
Borough, 21 Pa. Superior Ct. 234, the center line
of the road which the borough proposed to vacate by
ordinance was the boundary line between the borough
and a township, hence the language of Judge PORTER,
p. 239, was in entire accord with the authorities.   In
Warner v. Coatesville Borough, 231 Pa. 141, the Bor-
ough of Coatesville, in connection with the Pennsylvania
R. R. Co., in order to remove certain grade crossings,
undertook to vacate by ordinance two streets, one of
which, Second avenue, formed part of a public highway
"beginning about eight hundred feet north of the bor-
ough line, and extending south to what is known as
Main street."  There is nothing in the report to show
that Second avenue was changed or relocated so as to
preserve the continuity of the highway.   The plaintiff,
Warner, filed a bill in equity to enjoin the proposed
vacations, on the ground of the invalidity of the ordi-
nances.   The court below enjoined the vacation of Sec-
ond avenue, because it formed "part of a public high-
way extending beyond the borough limits, and [was]
therefore within the jurisdiction of the Court of Quarter
Sessions," but dismissed the bill as to the remaining
street.   Warner took the appeal to the Supreme Court.
The Borough of Coatesville took no appeal from the
decree enjoining the vacation of Second avenue.   That
question, therefore, was not before the Supreme Court,
and the opinion of the Supreme Court is not the basis
for the fifth syllabus of the report: "A borough has no
power to vacate a portion of a borough street forming
part of a public highway extending beyond the borough
limits."  The only questions before the Supreme Court on
this appeal were whether notice of the ordinance involved
should have been given under the provisions of the Act
of May 16, 1891, P. L. 75, or of May 22, 1895, P. L. 106,
and whether the latter act repealed the former.   Al-
though not before the Supreme Court, no fault can be
found with Judge HEMPHILL's conclusion, nor with the

fifth syllabus of the report, provided it is restricted to a vacation which destroys the continuity of such a / through highway.

In St. David's Church v. Sayen, 244 Pa. 300, the board of township commissioners of Radnor Township under-took to vacate a section of a public road "which begins at the Valley Forge road in the adjoining Township of New-town and extends therein two hundred and ten and thirty-eight one-hundredths feet, where it crosses the line dividing the Townships of Newtown and Radnor, and ends in the Township of Radnor." The court held that the board of township commissioners of a township of the first class had no authority to vacate a road lying partly within and partly without the township. The report shows no change or relocation of the road, but an absolute vacation or closing thereof. The proceeding was mandamus to compel its opening and repair.

We are of the opinion that there is nothing in these decisions, which we have gone into at this length on account of the importance of the case, which denies the Borough of Duryea the power exercised in this instance; that a slight relocation or substitution, wholly within the confines of a borough, of a through road, which does not destroy nor interrupt the continuity of the road and travel thereon, is not forbidden to the borough authorities; that it belongs to the borough, along with the other regulatory powers given by the Act of 1851. As to the validity of the ordinance, it suffices to say that the plaintiff herself offered the ordinance book in which it was recorded in evidence, and thereby gave prima facie evidence of its validity: Grier v. Homestead Bor-ough, 6 Pa. Superior Ct. 542, p. 549; Ridley Park Bor-ough v. Light & Power Co., 9 Pa. Superior Ct. 615. If anything essential to its validity had been omitted in passing or publishing it, it devolved upon the party re-sisting it to show such invalidity: Grier v. Homestead Borough, supra. This the plaintiff failed to do. The

evidence produced by her rather showed the publication required by the Act of May 22, 1895, P. L. 106, than otherwise.  It was not essential that notice of the ordinance should be given the plaintiff, as she was not the owner of the property nor a party interested at the time the ordinance was passed or the work begun.  As the ordinance was passed and the work in question done before the passage of the Borough Code of 1915, we have not considered the changes in the law made by the enactment of that act.

The first assignment of error is sustained.

It is not necessary to pass upon the remaining assignments.  We are not disposed, however, to adopt the narrow construction of the court below as to the effect of the Act of June 7, 1901, P. L. 531, for the abolition of grade crossings, and limit either a borough or a railroad company to the construction of an overhead or underground crossing on the exact lines and location of the surface road.  A fair construction of the whole act and its provisions for altering the "location" of the highway (Sec. 5) and the purchase or condemnation of additional land (Sec. 7) should receive a liberal interpretation and permit deviation from the lines of the surface road, if required by engineering difficulties.  The Supreme Court construed the Act of 1901 liberally in Penna. R. R. Co. v. Bogert, 209 Pa. 589, where it was held to repeal the General Road Act of 1836, in so far as the latter related to crossings at grade.

The judgment is reversed, at the costs of the appellee, and is now entered in favor of the defendants.