**SCHUMAN CO. v. NELSON et al.**
**Civ. No. 8573.**

United States District Court,
W. D. Pennsylvania.

July 28, 1954.

Gilbert E. Morcroft, Pittsburgh, Pa., for complainant.

Miller & Miller, Pittsburgh, Pa., for respondents.

FOLLMER, District Judge.

This is an appeal, under the provisions of the Perishable Agricultural Commodities Act, 1930, 46 Stat. 531, 7 U.S.C.A. § 499a et seq., to set aside a reparation award order of the Secretary of Agriculture. The Act provides that the "suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated." 7 U.S. C.A. § 499g(c). The case was submitted to the Court on the basis of the record compiled below pursuant to Stipulation between counsel. No further evidence was produced.

The following Findings of Fact were made by the Secretary of Agriculture:

"1. Complainant, The Schuman Company, is a corporation whose post office address is 216 South Water Market, Chicago, Illinois.

"2. Respondent is a partnership composed of James E. Nelson, James W. Nelson, and Donald G. Nelson, doing business as J. E. Nelson & Sons, with its principal place of business at 1102 Eleventh Street, Altoona, Pennsylvania. At the time of the transaction involved herein, respondent was licensed under the act.

"3. On or about August 20, 1948, in the course of interstate commerce, the parties entered into an agreement for the sale by complainant to respondent of 312 crates of Gold Star Brand lettuce contained in car MDT 5743, at an agreed price of $2.-10 per crate, plus $60 topice, plus retopicing, or for a total price of $715.20, f. o. b. acceptance final. The contract called for the shipment to be billed 'open' to respondent at Johnstown, Pennsylvania.

"4. On August 20, 1948, complainant ordered the shipment, then in transit, diverted to Johnstown, Pennsylvania, and to be billed to itself 'advise' respondent. On August 21, 1948, which was two days prior to arrival of the lettuce at destination, respondent rejected the shipment to complainant.

"5. On August 26, 1948, complainant diverted the shipment to the Allison Produce Company at New York, New York. Following inspection of the produce at New York City by the McCabe Inspection Service on August 31 and September 1, 1948, the carload of lettuce was abandoned to the carrier. Complainant has received no part of the purchase price.

"6. Net proceeds of $56.76 were realized by the carrier upon resale of the carload of lettuce. This amount is being held by the carrier.

"7. The formal complaint was filed October 20, 1948, which was within 9 months after the cause of action accrued."

The Secretary further found that "It is undisputed that the terms were f. o. b. acceptance final."

Although finding the evidence conflicting, the Secretary concluded, (a) that the weight of the evidence supports respondent's testimony and other proof that the parties agreed upon a sale of the lettuce in car MDT 5743, to be billed "open" to Johnstown, Pennsylvania; (b) that it followed that there existed a binding contract between the parties entered into on an f. o. b. acceptance final basis and requiring complainant to bill the shipment "open"; (c) that "since complainant is entitled to recover the full contract purchase price from respondent, it follows that respondent should receive the funds being held by the carrier", to wit., $56.-76.

The appeal is based on the following grounds:

(a) Respondents' agreement to purchase the carload of lettuce from complainant was made subject to the condition that complainant would divert the car to respondents at Johnstown, Pennsylvania, on credit or "open" billing, and the Department of Agriculture so found as a fact.

(b) That immediately on receiving telegram from complainant advising that said car was being diverted to respondents at Johnstown, Pennsylvania, on cash or "advise" billing, respondents notified complainant they would not accept the said carload of lettuce unless the complainant changed the billing on said car to "credit" or "open" billing, as specified.

(c) That by reason of complainant's failure and refusal to so change the billing, respondents refused to accept the car of lettuce, as they had the legal right to do.

(d) That there was no meeting of the minds.

(e) That complainant's so-called confirmatory telegram amounted merely to a counteroffer, which respondents never accepted.

(f) Statute of Frauds.

(g) Department's Conclusions and Order are without justification and contrary to law.

(h) Under the facts and law, respondents-appellants are under no legal duty to pay to complainant the sum of $715.20, or any part thereof.

As above indicated, it is an undisputed matter of record in this case that the contract between the parties was made on the basis of "f. o. b. acceptance final." Section 46.24(m) of the Regulations (other than Rules of Practice) under the Perishable Agricultural Commodities Act, 1930 (Title 7, Chapter I, Subchapter B, Part 46, of the Code of Federal Regulations) defines that term as follows:

"(m) 'F. o. b. acceptance final' means that the buyer accepts the produce f. o. b. cars at shipping point without recourse."

The Secretary's determination of the effect of this term in the contract is,

"It is well settled that the term 'f. o. b. acceptance final' in a contract means that the buyer not only surrenders his right of rejection but also waives, in the event that he does reject, any claim for damages which he might otherwise have had against the seller. * * * Under the circumstances, the fact the shipment was billed 'advise' rather than 'open' is not available to respondent as a defense."

It appears from a reading of appellants' brief that their complaint here is one of credit. They state, inter alia,

"Though somewhat out of order at this point, it would be well to point out that the term 'bill open' meant that the car should be shipped to the plaintiff under an open credit status, as distinguished from a shipment 'billed advise' or 'closed billing' wherein the right to possession of the car was retained by the seller until full payment was made. The import of this contract provision was covered in the testimony of Mr. Nelson and could be readily seen when it is understood that no orders for diversion are recognized by the Railroad from the purchaser under a closed billing status; this in addition to the other regular credit factors incident to open billing."

The Secretary was correct in holding that the method of billing is not available to the respondents-appellants as a defense to this action.

Respondents-appellants were fully cognizant of the meaning and impact of the term "f. o. b. acceptance final." This term, as understood in the trade, meant that respondents had no right of rejection. If any collateral specifications in the contract were breached, respondents would be entitled to recover for losses shown to have been sustained. Under this type of shipment, respondents were clearly obligated to accept the shipment and seek recovery of their damages from the seller; their rejection of the shipment was, therefore, in violation of the contract.[1]

Rothenberg v. H. Rothstein & Sons, 3 Cir., 183 F.2d 524, 529, effectually disposes of appellants' reliance on the

1. LeRoy Dyal Co., Inc. v. Allen, 4 Cir., 161 F.2d 152.

Statute of Frauds. In that case the court held,

"* * * that in the reparation proceeding before the Secretary of Agriculture from which the appeal to the court below was taken § 4 of the Uniform Sales Act of Pennsylvania was not applicable either to invalidate the contract between the parties out of which the controversy arose or to deny the appellee the right to file his complaint with the Secretary and to secure a reparation order. * * *"

In the instant case a careful review of the record does not, in my judgment, reveal any findings of fact or conclusions of law that were erroneous or that were not fully justified by the evidence. It is, therefore, apparent that on all the facts, including the "Findings of Fact" made by the Secretary of Agriculture, which I adopt and incorporate as a part of my findings of fact, that the award made by the Secretary must stand.

An appropriate order may be submitted.