The **SCHUMAN COMPANY**

v.

**James E. NELSON, James W. Nelson and Donald G. Nelson, d/b/a J. E. Nelson & Sons, Appellants.**

**No. 11450.**

United States Court of Appeals, Third Circuit.

Argued Jan. 19, 1955.

Decided Feb. 14, 1955.

**628**

---

Harvey A. Miller, Jr., Pittsburgh, Pa. (Miller & Miller, Pittsburgh, Pa., on the brief), for appellants.

Gilbert E. Morcroft, Pittsburgh, Pa., for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Where the terms of shipment are "f. o. b. acceptance final" is a buyer denied the right to reject such shipment for a breach of contract not relating to the quality or condition of the goods, in a reparations proceeding instituted by the seller before the United States Department of Agriculture ("Department") under the Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499f? [1]

That is the primary issue presented by this appeal from the judgment of the United States District Court for the Western District of Pennsylvania sustaining an award made by the Department.

The seller originally filed a complaint against the buyers before the Department for reparations following their rejection of a shipment of goods. The buyers contended that they were relieved of the obligation to accept the shipment because the seller had committed a material breach of contract in that it had changed the contract with respect to the terms of shipment. The Secretary of Agriculture awarded $715.20, the full purchase price of the goods,[2] with interest to the seller, holding that by the terms of the contract the buyers had given up their right to reject. The District Court in a trial de novo [3] without jury made a similar ruling and entered judgment for the seller.

The undisputed [4] facts are as follows:

---

[1]. 7 U.S.C.A. § 499b:

"*Unfair conduct; what constitutes*

"It shall be unlawful in or in connection with any transaction in interstate or foreign commerce—

        \*      \*      \*      \*      \*

"(2) For any dealer to reject or fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity bought or sold or contracted to be bought, sold, or consigned in interstate or foreign commerce by such dealer; \* \* \*."

7 U.S.C.A. § 499e:

"*Liability to persons injured—Amount of damages*

"(a) If any commission merchant, dealer, or broker violates any provision of section 499b of this title he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.

"Remedies. (b) Such liability may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies."

[2]. The goods were abandoned to the carrier which received $56.76 net upon their sale. The Secretary of Agriculture held that since the buyers were liable for the full purchase price they were entitled to receive the $56.76 from the carrier.

[3]. 7. U.S.C.A. § 499g(c).

[4]. The parties while disputing the terms of the contract before the Secretary of Agriculture introduced no new evidence before

On or about August 20, 1948, in the course of interstate commerce the parties executed a contract providing for the sale and delivery of a carload of lettuce. Terms of shipment were "f. o. b. acceptance final", the goods to be billed "open" to Johnstown, Pennsylvania. On the same day the seller notified the buyers that the car, then in transit, had been diverted to Johnstown, Pennsylvania and billed "advise." The following day, or two days prior to the arrival of the car at destination, the buyers wired the seller that as a result of the change in billing they considered the contract cancelled. This suit by the seller followed.

By Section 2(2) of the Act [5] it is declared unlawful for any dealer to reject without reasonable cause any perishable commodity bought or sold in interstate commerce. A remedy is provided the seller for such rejection in addition to those allowed by statute or the common law.[6] Section 15 of the Act [7] empowers the Secretary of Agriculture to issue rules and regulations necessary to carry out the provisions of Section 2(2). Acting under this latter Section, the Secretary has defined "rejection without reasonable cause" to mean "the act of any person, who has purchased * * * produce in commerce * * * (2) of advising the seller or shipper or his agent that such produce will not be received *in accordance with the contract* or offer * * *" (emphasis supplied) 7 Code of Federal Regulations, Section 46.2(q). If the buyers' rejection was a refusal to receive "in accordance with the contract" it was not for reasonable cause and therefore the sanctions of the act would become operative.

In determining whether the buyers refused to receive in accordance with the contract we must preliminarily consider the term "f. o. b. acceptance final." The Regulations provide definitions of terms that are commonly used in contracts involving perishable commodities.

"Section 46.24 *Terms construed.* Unless otherwise defined, the following terms when included in a contract or communication involved in any investigation made or hearing held pursuant to the act shall be construed, respectively, as follows:"

The full meaning of the term "f. o. b. acceptance final" is dependent upon a construction of the following definitions:

"(i) 'F. o. b.' * * * means that the produce quoted or sold is to be placed free on board the boat, car, or other agency of the through land transportation at shipping point, in suitable shipping condition * * * and that the buyer assumes all risk of damage and delay in transit not caused by the shipper, irrespective of how the shipment is billed. The buyer shall have the right of inspection at destination before the goods are paid for, but only for the purpose of determining that the produce shipped complied with the terms of the contract or order at time of shipment, subject to the provisions covering suitable shipping condition. Such right of inspection shall not convey or imply any right of rejection by the buyer because of any loss, damage, deterioration, or change which has occurred in transit."

\* \* \* \* \* \*

"(*l*) 'F. o. b. acceptance' means the same as 'f. o. b.', except that the buyer assumes full responsibility for the goods at shipping point and has no right of rejection on arrival, nor has he any recourse against the shipper because of any change in condition of the produce in transit, unless the produce when shipped was not in suitable shipping condition

---

the District Court and on oral argument made clear that the findings below should constitute the basis for our decision.

5. 7 U.S.C.A. § 499b(2).

6. 7 U.S.C.A. § 499e(b).

7. U.S.C.A. § 499o.

\* \* \* The buyer's remedy under this method of purchase is by recovery of damages from the shipper and not by rejection of the shipment."

"(m) 'F. o. b. acceptance final' means that the buyer accepts the produce f. o. b. cars at shipping point without recourse."

It will be observed that the term "f. o. b. acceptance final" takes on meaning only as a result of the two preceding definitions, (i) and ($l$). The three sections form a progression:

Under an "f. o. b." contract the right of rejection is lost only with respect to goods which have been damaged or changed during transit.

In an "f. o. b. acceptance" contract there is a further curtailment of the right to reject in that the buyer may not refuse to accept the goods on the ground that they were not shipped in suitable shipping condition. The buyer does retain, however, the right to sue for deterioration or damage during transit if this were caused by defective shipping condition.

An "f. o. b. acceptance final" contract denies the seller the right to sue for such damage. In other respects, the incidents of such a contract are the same as those under an f. o. b. acceptance agreement. LeRoy Dyal Co. v. Allen, 4 Cir., 1947, 161 F.2d 152, 158.

This being so, we may freely direct our attention to the fuller definition accorded to "f. o. b. acceptance" in determining the limits of a buyer's right to reject under an "f. o. b. acceptance final" contract. Section (1) in defining the former term states that the buyer "has no right of rejection on arrival". Obviously the meaning of this phrase must be conditioned by context, for surely the right to reject is not absolutely lost. For example, it is undoubtedly true that the

buyer would be relieved of any responsibility under the contract if prior to shipment the seller notified him of an increase in the price and the buyer refused to accede. The obligation to accept must necessarily be restricted by some standard.

And yet, nowhere in these proceedings has there been suggested any such limitation. We do not conceive it to be our function to choose among the various standards that could be formulated in delineating the right to reject. The courts cannot attempt to fill in the interstices of legislation when an administrative agency empowered by statute to perform this very function has issued valid regulations. The meaning to be given trade terms is a matter peculiarly within the competence of the administrative agency. Since that agency has exercised its power by issuing regulations, we can seek only to place a reasonable construction upon them, bearing in mind that the parties to this contract have presumably relied upon the regulation in issue.

Accepting the foregoing as a premise for decision, we are of the opinion that the phrase "has no right of rejection on arrival" is applicable only when the buyer seeks to reject for causes affecting the condition or quality of the goods. Sections (i) ($l$) and (m) speak only of risk of loss and the rights of the buyer for damage or deterioration of the merchandise. It would be anomalous indeed to hold that while these sections refer only to recovery for damage or deterioration, they nevertheless prohibit rejection for all causes. Since no other limitation on the right to reject is supplied by the regulation, we must assume that this right is to be interpreted in the light of the general subject matter covered by the regulation.

Both the Secretary of Agriculture[8] and the District Court[9] held that the

---

8. "It is well settled that the term 'f. o. b. acceptance final' means that the buyer not only surrenders his right of rejection but also waives, in the event that he does reject, any claim for damages which he might otherwise have had against the seller \* \* \* Under the circumstance, the fact that the shipment was billed 'advise' rather than 'open' is not available to respondent as a defense." Appellants' Appendix 43a, 44a.

9. "This term, as understood in the trade, meant that respondents had no right of

buyer could not reject in this case, citing as authority L. Gillarde & Co. v. Joseph Martinelli & Co., 1 Cir., 168 F.2d 276, amended 1 Cir., 1948, 169 F.2d 60, certiorari denied 1948, 335 U.S. 885, 69 S.Ct. 237, 93 L.Ed. 424, and LeRoy Dyal Co. v. Allen, 9 Cir., 1947, 161 F.2d 152. In the Gillarde case the buyer had refused to accept the goods because they were defective. The Court had no occasion to consider the issue now presented. In the Dyal case the buyer rejected shipment because of a variance in the shipping date and because inspection certificates did not bear the proper date. In holding for the seller the Court decided only that these variances did not constitute material breaches of contract. Consequently the issue as to whether the rejection would have been justified had there been a material breach of contract was never reached. Neither case, therefore, is apposite to the instant controversy.

In gauging the buyer's right to reject in the circumstances of this case, therefore, the term "f. o. b. acceptance final" is not material. Whether the buyer had such a right is to be determined by whether the change in the billing constituted a material breach of contract.

The Perishable Agricultural Commodities Act does not contain provisions which bear on this problem. Applicable state law as determined by conflict of laws doctrine is therefore controlling. See Rothenberg v. H. Rothstein & Sons, 3 Cir., 1950, 183 F.2d 524, 526, 21 A.L.R.2d 832.

The contract here involved was negotiated by an interstate telephone communication. The defendant was in Pennsylvania and it is a fair inference that since the plaintiff's place of business was in Chicago, its representative was in Illinois. The record does not disclose, however, which party was the acceptor and so we cannot ascertain to which state's law reference should be made. Restatement, Conflict of Laws, Sec. 326, Comment C.

But the absence of data upon which to ground a rule of reference does not preclude the decision of this case, for we are of the opinion that the law of Illinois and of Pennsylvania afford identical results in the instant case.

The billing "open" meant that the sale was on open credit, while the billing "advise" meant that the seller retained the right of possession until full payment was made. As a corollary of this right to possession the railroad would not accept from the buyers any order to divert the car to another point. The buyers' right of control was suspended until they should make full payment.

We think it clear, therefore, that as a result of the alteration in billing an essential object of the contract to sell was breached. Accordingly the buyers were at liberty to consider the agreement repudiated.[10]

For the reasons stated the Order of the District Court will be reversed and the cause remanded with instructions to proceed in accordance with this opinion.

---

rejection." Schuman Co. v. Nelson, D.C. W.D.Pa.1954, 122 F.Supp. 497, 499.

10. See Unique Watch Crystal Co. v. Kotler, 1951, 344 Ill.App. 54, 64, 99 N.E.2d 728, 733.