## Warner, Appellant, *v.* Coatesville Borough.

*Municipalities—Boroughs—Street improvements—Method of procedure—Act of May 16, 1891, P. L. 75, Act of May 22, 1895, P. L. 106.*

1. Section 10 of the Act of May 16, 1891, P. L. 75, prescribing the method of procedure and the kind of notice necessary to effectuate the power given to municipalities by sec. 9 of the act to make street improvements on petition of abutting owners was not repealed by the Act of May 22, 1895, P. L. 106, giving municipal corporations power to make street improvements without any petition of property owners. The proviso to the act of 1895, relating to the passage of the ordinance, and to the kind of notice required, is restricted in its application to ordinances passed by borough councils providing for street improvements without a petition from abutting property owners. When the proceeding is instituted by the petition of abutting owners, sec. 10 of the act of 1891 applies.

*Boroughs—Councilmen—Ouster from office—Officers de facto.*

2. Where a borough councilman, ousted from office by decree of court because a stockholder in a corporation furnishing supplies to the borough, forthwith sells his stock, resigns his office, and is, on the evening of the same day, re-elected by council to fill the vacancy thus made, it having authority to fill vacancies in its body, and these actions are all taken bona fide, such person has a colorable title and becomes and continues a councilman de facto until a second ouster later decreed, and during such period the votes and acts of such councilman de facto are as forceful and binding, where public interests are concerned, as though de jure.

*Boroughs—Borough council—Burgess—Veto—Action on veto—Act of May 23, 1893, P. L. 113.*

3. The Act of May 23, 1893, P. L. 113, does not require action to be

taken by a borough council upon an ordinance vetoed by the burgess at any particular meeting or within any specified time; and such vetoed ordinance need not be reconsidered at the next regular meeting after its return.

*Boroughs—Drainage system—Approval of state board of health.*

4. A borough drainage system designed to provide solely for rain, snow and surface waters does not require approval by the state board of health.

*Boroughs—Borough streets—Vacation—Highways extending beyond borough limits.*

5. A borough has no power to vacate a portion of a borough street forming part of a public highway extending beyond the borough limits.

Argued Feb. 6, 1911. Appeal, No. 145, Jan. T., 1910, by plaintiffs, from decree of C. P. Chester Co., in equity, No. 524, on bill in equity in case of Michael Warner et al. v. Coatesville Borough, Jesse Shallcross, Burgess, and John E. Way et al., members of town council of said borough. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to declare certain ordinances and contracts invalid and to restrain the laying out and vacation of certain streets thereby.

HEMPHILL, P. J., filed an opinion in part as follows:

This bill seeks to have the defendant borough enjoined from enforcing or carrying out the provisions of two ordinances, finally passed by its council on November 16, 1909.

### FINDINGS OF FACTS

The ordinances were enacted, apparently, for the improvement of the borough and the protection of the lives and property of the traveling public—both commendable and desirable objects.

One provides for the vacation, alteration and extension of portions of certain streets, to avoid grade crossings over the Pennsylvania railroad and to connect with subways to be constructed by said railroad company.

The other authorizes the execution of a contract by the borough with the Pennsylvania Railroad Company, for the purpose of carrying out the first named ordinance, upon condition that said company shall construct the subways, build and macadamize certain streets and construct sidewalks, drains, etc., as therein specified.

Both ordinances were passed by council, September 27, 1909, were vetoed, October 4, 1909, by the chief burgess and finally passed over his veto, November 16, 1909.

On October 4, 1909, William H. Hamilton, who had been elected to council, was its president, and had voted for the ordinances upon their original passage, was, by decree of this court, ousted from his office as councilman and at a meeting of council that evening, resigned, but was, with the advice of the borough solicitor, immediately re-elected by the council to fill the vacancy thus caused, he having in the meantime sold his stock in a corporation, the ownership of which, the court held, disqualified him for membership in the council. At this meeting consideration of the veto message was postponed by adjournment to October 25, 1909, and then again, by adjournment, to November 1, 1909, Mr. Hamilton voting in favor of both adjournments.

New quo warranto proceedings against Mr. Hamilton had been instituted in the meantime, and on October 26, 1909, by decree of this court, he was again ousted from his office of councilman; and his place was subsequently filled by the election of Joseph Gallup.

On November 1, 1909, when council met pursuant to adjournment, it again adjourned, by a majority of one (without counting Hamilton's vote), to November 15, 1909, when councilman Kirk, who all this time had been absent by reason of illness, was present, and the ordinances were considered and passed over the veto, by a vote of five to two.

The first ordinance provides inter alia for the vacation of Second avenue in said borough from the north side of Railroad street (a street on the south side of and

parallel with the present tracks of the Pennsylvania railroad), to a point on the north side of said tracks, which originally constituted part of a public highway beginning about eight hundred feet north of the borough line, and extending south, to what is known as Main street in said borough; and was ordained by the court of quarter sessions of this county some time before the incorporation of the borough of Coatesville in 1867.

### CONCLUSIONS OF LAW

Numerous objections have been raised and urged against the validity of these ordinances, which we shall consider and dispose of in order.

One, however, viz: that they are void because they require and authorize the expenditure of borough funds outside its limits—in an adjoining township—has been removed, since the filing of the bill, by the Pennsylvania Railroad Company filing a stipulation or agreement, whereby, it agrees to pay all expenses and damages that may be occasioned or recovered outside the borough and releasing it from all responsibility or liability for the same.

Another is based upon the conduct and votes given by William H. Hamilton, because as plaintiffs allege ineligible to the office of councilman, Mr. Hamilton had been duly elected to council and was serving as president of that body on September 27, 1909, when the ordinances were originally introduced and passed—and voted in the affirmative. He was, therefore, at the time, an officer de facto, if not de jure.

On October 4, 1909, he was ousted by decree of this court, because a stockholder in a corporation furnishing supplies to the borough, which under the law disqualified him from serving as councilman. He forthwith sold his stock, resigned his office and was, the evening of the same day, re-elected by council to fill the vacancy thus made; it having authority to fill vacancies in its body.

We are satisfied, that in thus acting, neither Mr. Hamil-

ton or the council, intended any disrespect towards the court or disregard of its decree, but believed, after consultation with the borough solicitor, that Mr. Hamilton having sold his stock was eligible for re-election. And the relators also, seem to have considered their actions bona fide, for instead of asking for an attachment for contempt they instituted new quo warranto proceedings to test his title under his election by council.

These proceedings terminated October 26, 1909,—in a second decree of ouster, the court holding that the first was for the term for which he had been elected; and that the legal presumption that disqualified him then, still continued, viz: that a stockholder in a corporation furnishing supplies to a borough, would by reason of that interest, be controlled or influenced in the discharge of his duties as councilman.

At the same meeting (October 4, 1909), the chief burgess returned the ordinances with his veto, which was spread upon the minutes; and a motion made to sustain the veto, which was amended by a motion to postpone consideration to an adjourned meeting on October 25, 1909,—that carried.

Further adjournments were made to November 1, 1909, and November 15, 1909, when after Joseph Gallup had been elected to fill the vacancy caused by Mr. Hamilton's second ouster, both ordinances were passed over the veto by a vote of five to two.

For all these adjournments Mr. Hamilton voted in the affirmative, and in all, excepting the last (November 1, 1909) his vote was necessary to constitute a majority.

Elected by council, duly empowered to fill vacancies in its body, Mr. Hamilton had a colorable title and became and continued, a councilman de facto until his second ouster. And as the votes and acts of officers de facto are as forceful and binding, where public interests are concerned as though de jure, we are of opinion that all of Mr. Hamilton's votes during that period were effective and the adjournments legal.

Why he voted at the meeting of November 1, 1909, the second decree of ouster having been filed October 26, 1909, does not appear. Whether because the writ had not been served upon him up to that time, or other reasons, is immaterial as there was an affirmative majority without his vote.

Upon the final passage of the ordinances over the veto, Mr. Hamilton did not vote, his place having been filled by the election of Joseph Gallup.

Other objections urged by the plaintiffs are that the ordinances "were not acted upon at the next regular meeting of council after the said ordinances and veto were returned to council," and that they "did not receive the affirmative votes of three-fourths of the members elect composing the council."

The Act of May 23, 1893, P. L. 113, does not require action to be taken upon a veto at any particular meeting or within any specified time, only that after a veto has been returned and spread upon the minutes, that the "council shall proceed to a reconsideration of such ordinance."

Public interest requires deliberation rather than haste, in legislation, as is evidenced by the constitution of our state and others; for haste too often results in the enactment of ill advised, improvident and some times vicious or injurious laws.

Nor does this act require that the ordinance shall be passed over the veto by a three-fourths or even a two-thirds vote of the members elected to make it operative, but specifically provides, "that when the number of councilmen is less than nine (in Coatesville the number is seven,) a majority of council and one vote more, shall be required to pass an ordinance over the veto." These ordinances were passed over the veto by a vote of five to two —a majority of council and one vote more.

Another objection is that the proposed drainage system has not been approved by the state board of health as required by law.

The drainage contemplated, is to provide solely for the

rain, snow and surface waters, and we know of no act of assembly requiring drainage systems for such uses to be approved by the state board of health, nor have we been referred to any. . . .

There remains but one other objection for consideration, viz.: "That the borough council had no jurisdiction or authority to lay out or vacate streets on the dividing line between the borough and township or beginning in the borough and ending in the township or vice versa, which the ordinances propose to do in the vacation of Second avenue and the street on the dividing line between the borough and Amos S. Scott and S. Horace Scott."

So much of this objection as relates to the Scott property need not be considered, as it was not urged upon the trial, and all the parties interested in the two rights of way across the Pennsylvania Railroad at Eleventh avenue have sold and released their rights in the same to said railroad company by agreement duly executed on November 2, 1909; and the stipulation or agreement first above referred to executed and filed by said company releases and relieves the defendant borough from any expense or damages outside the limits of the same.

The sole remaining question is—has the borough the power to vacate that portion of second avenue which crosses the tracks of the Pennsylvania Railroad Company?

The Acts of May 16, 1891, P. L. 75, and May 22, 1895, P. L. 106, in granting to municipalities power to open, vacate, etc., streets and alleys, restricts it by the words "within its limits," while the Act of April 23, 1856, P. L. 525, in making a similar grant to boroughs, use the word "therein," both meaning the same thing and restricting the jurisdiction to streets and alleys "therein" or "within its (the borough) limits."

The judicial construction therefore given the word "therein" is equally applicable to the words "within its limits," and the former has been held to apply only to streets, etc., wholly within the limits of the borough.

In Somerset & Stoystown Road, 74 Pa. 61, the court

says: "But by streets and alleys 'therein' that is within the borough limits—must necessarily be meant such as begin and end therein, and not such public roads as are or may be opened through the borough, of which a part only is within the borough limit.' "

In South Chester Road, 80 Pa. 370, the court says: "The public road lies within the borough of South Chester as laid out by the viewers, and as is manifest from the entire record. Being wholly within the borough, the court of quarter sessions had not jurisdiction, as is well shown in the case of the Somerset & Stoystown Road, 74 Pa. 61."

Both these cases are cited with approval by the court in Parkesburg Borough Streets, 124 Pa. 511.

In Palo Alto Road, 160 Pa. 104, the proceedings were in the court of quarter sessions and exception was taken to the report of the reviewers on the ground, that said court had no jurisdiction, because the portion of the road or street to be vacated was within the borough of Palo Alto. The part to be vacated, however, having been, before the incorporation of said borough, a portion of a public road beginning and ending outside the borough and passing through it, the court, after reviewing the authorities above cited, held, "We are therefore led to the conclusion that under these authorities, the jurisdiction in this case is in the quarter sessions, since the road is not one wholly within the borough limits."

In view of these decisions and the construction they place upon the word "therein," we are of the opinion that the borough of Coatesville has no power to vacate that portion of Second avenue, before described, it forming part of a public highway extending beyond the borough limits, and therefore within the jurisdiction of the court of quarter sessions.

To much of the writ of injunction heretofore issued, as restrains the borough from vacating that portion of Second avenue, must be made perpetual; and as to the remaining portions of the plaintiff's bill and prayers, they are dismissed and the injunction dissolved.

We therefore make the following decree:

It is hereby ordered and decreed that the writ of preliminary injunction heretofore issued be made perpetual in so far as it enjoins and restrains defendants from vacating that part of Second avenue crossing the tracks of the Pennsylvania railroad, and is dissolved as to the remainder of the bill and prayers, which are dismissed; the costs to be paid equally by the plaintiffs and defendants.

*Error assigned* was decree of the court.

*George B. Johnson*, with him *Granville L. Rettew* and *Wm. Meade Fletcher*, for appellants.—As the ordinances were adopted only seventeen days after their introduction and as they did not receive the votes of three fourths of the members elect of council nor the approval of the burgess as required by the Act of May 22, 1895, P. L. 106, and its re-enactment in the Act of March 19, 1903, P. L. 35, they are void: Dorrance v. Borough of Dorranceton, 181 Pa. 164; Evans's Petition, 7 Del. County Rep. 77; Focht v. Lebanon City, 4 Dauphin County Rep. 12.

*Alfred P. Reid*, for appellees.—The provisions of the act of 1891 are not inconsistent with the provisions of the act of 1895 and are therefore still in force: Haspel v. O'Brien, 218 Pa. 146; Ursinus College v. Collegeville Borough, 10 Pa. Dist. Rep. 642.

OPINION BY MR. JUSTICE ELKIN, March 20, 1911:

This controversy grows out of the efforts made by the borough authorities in connection with the railroad company to eliminate grade crossings by substituting at the cost of the railroad company subways therefor. As a protection to the public and as a means of avoiding the dangers incident to their use the abolition of grade crossings is insisted upon by the courts in all cases where the conditions are such as to make it practicable to eliminate them. When, therefore, the local authorities undertake

in the interest of the public to do that which the law favors, courts should not be astute to seize upon technical refinements in order to defeat such a worthy purpose. Of course, positive and mandatory requirements of the statutes regulating such matters cannot be ignored even if a worthy purpose is to be served. We must inquire whether the proper statutory steps were taken by the appellee borough to authorize the street improvement necessary to avoid grade crossings. The ordinance authorizing the vacating, laying out, extension and opening of the new streets was adopted by the borough council upon the petition of abutting owners. The procedure as to notice followed the provisions of the tenth section of the Act of May 16, 1891, P. L. 75, which appellants contend was repealed by the Act of May 22, 1895, P. L. 106. If this position is well taken, it would mean that the provisions of the act of 1895 as to procedure and notice, being the only ones in force at the time the ordinance was passed, must be followed in order to give validity to the ordinance. The most important question to be determined on this appeal is, whether the act of 1895 repealed the tenth section of the act of 1891. The act of 1891, relating to the laying out, opening, widening, straightening, extending or vacating streets and alleys, and the grading, paving and improving the same, applies to the several municipalities of the commonwealth. It is, therefore, applicable to boroughs. The ninth section of this act conferred upon all municipal corporations the power to open, widen, straighten or extend streets or alleys, or parts thereof within their limits, and to vacate the same, upon the petition of a majority in interest and number of owners of property abutting on the line of the proposed improvement. The tenth section provides that within ten days after the passage or approval of the ordinance notice thereof shall be given by handbills posted in conspicuous places along the line of the proposed improvement. It also provides what the notice shall contain as well as the method of procedure in the event of an appeal

to the court of common pleas. It will thus be seen that the main purpose of sec. 9 was to confer upon municipalities the power to make street improvements on petition of abutting owners, and sec. 10 prescribes the method of procedure and the kind of notice necessary to effectuate the purpose intended. In the case at bar the borough council followed the procedure and gave the notice prescribed in sec. 10 of the act of 1891. If this section has not been repealed and is still in force the ordinance, notice and procedure were in strict compliance with the law, and, therefore, a valid exercise of borough power. The learned counsel for appellants contend with much force and ability that secs. 9 and 10 of this act were either repealed or supplied by the act of 1895. This exact question has not been passed upon by the Supreme Court and the courts below seem to entertain different views about it. It is a close question and good arguments have been made on both sides of the contention. We have concluded after a review of the authorities, a consideration of the arguments and an examination of the several statutes relating to this subject, that the two acts may stand together. In other words, there is nothing repugnant in the existence of two methods of initiating street improvements nor in the kind and character of notice to be given in each instance. The Act of May 22, 1895, P. L. 106, purported to be and was an amendment to sec. 9 of the Act of May 16, 1891, P. L. 75. It re-enacts totidem verbis all of sec. 9 and then adds as a new and additional power that: "Every municipal corporation shall have power, whenever the councils or authorities thereof shall deem it necessary, to open, widen, straighten or extend streets or alleys, or parts thereof, and to vacate streets or alleys, or parts thereof, without any petition of property owners." It is perfectly clear that the legislature did not intend to limit the power of municipalities in providing for street improvements by the passage of the act of 1895. In express terms the later act re-enacts all the provisions of sec. 9 of the former act and in addition confers the power

to proceed whenever the authorities shall deem it necessary without the petition of property owners. These acts provide two methods of initiating street improvements, the act of 1891 upon the petition of property owners, and the act of 1895 upon the initiation of the municipal authorities without such petition. The methods are separate and distinct and each serves a useful public purpose. The act of 1895 took away no power in any municipality that existed before its approval, nor in our opinion did it interfere with any method of procedure already authorized, but let the provisions of the former statute stand except where there was an irreconcilable repugnancy: Hanover Borough's App., 150 Pa. 202. It will be observed. that the act of 1895 is entirely silent as to sec. 10 of the act· of 1891. This section of the former act is not repealed in express term by the later act, nor does such repeal arise by necessary implication. The act of 1895 contains no repealing clause and there is no such clear inconsistency or repugnancy between the two acts as to require that the later act be held to repeal sec. 10 of the former: Somerset and Stoystown Road, 74 Pa. 61. It is true that the act of 1895 contains a proviso requiring such ordinances to be passed by the affirmative votes of three-fourths of the members elect composing the councils of the municipality. It also provides, that no such ordinance shall be finally passed in a less period than thirty days from the date of its introduction into councils, and for publication in the newspapers. The contention now made is that the proviso to the act of 1895 as to procedure and notice repealed by implication sec. 10 of the act of 1891. To sustain this position it is necessary to point out an irreconcilable repugnancy and this has not been done. Indeed as to cities the very opposite has been held. The Act of May 22, 1895, P. L. 105, No. 78, empowering cities to improve public streets contains a proviso in almost identical language, and this court, in Greenfield Avenue, 191 Pa. 290, held that the restrictions of the act were introduced as a substitute for the petition, and that the old

proceeding remained without modification. The Act of
May 22, 1895, P. L. 106, relied on by appellants in the
present case, was approved on the same day as the act of
1895, relating to cities and construed in the Greenfield
avenue case. As has been pointed out by a learned judge
of one of the lower courts, it is perfectly clear that the
amended ninth section of the act of 1891 was passed in
order to include boroughs with cities in legislation relating
to street improvements. As a result of these statutes
cities and boroughs have the same general powers relating
to street improvements. If, therefore, cities have the
power to make street improvements by petition without
the restrictions found in the proviso of the Act of May 22,
1895, P. L. 105, as declared in the Greenfield avenue case,
it necessarily follows that the same power still rests in
boroughs to be exercised according to the procedure and
subject to the notice provided in sec. 10 of the act of 1891.
Nothing contained in the act of 1895 indicates a legisla-
tive intention to interfere in any manner with sec. 10 of
the act of 1891. The two acts provide two kinds of no-
tices; the one by handbills posted in conspicuous places
along the route of the proposed improvement, the other
by publication of the ordinance in newspapers. The first
applies where the abutting property owners take the initial
steps by petition, and the second where the borough coun-
cil proceeds of its own volition without such petition.
This makes an orderly system and gives full force and
effect to the provisions of each statute. For these reasons,
we think the sounder view is, that the proviso to the act
of 1895, relating to the passage of the ordinance, and to
the kind of notice required, is restricted in its application
to ordinances passed by borough councils providing for
street improvements without a petition from abutting
property owners. When the proceeding is instituted by
the petition of abutting owners, sec. 10 of the act of 1891
applies.

No useful purpose will be served by discussing several
other interesting questions raised by this appeal. The

learned court below has disposed of each one of them in an opinion fully justifying the conclusion reached. As to all the questions not discussed in the present opinion the reasoning and conclusions of the court below are adopted.

Decree affirmed at the cost of the appellants.