State Dental Council and Examining Board *v.* Pollock, Appellant.

Argued November 14, 1973. Before JONES, C. J., EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

reargument refused November 7, 1974.

*Jerome H. Gerber,* with him *Handler, Gerber, Widmer and Weinstock,* for appellant.

*Gerald Gornish,* Deputy Attorney General, with him *Israel Packel,* Attorney General, for appellee.

*William J. Madden, Jr.,* for Pennsylvania Dental Association.

OPINION BY MR. JUSTICE NIX, May 3, 1974:

This is an appeal from an order of the State Dental Council and Examining Board (hereinafter referred to as Dental Board) suspending Stanley L. Pollock's license to practice dentistry for a period of thirty days. Pollock appealed to the Commonwealth Court which stayed the suspension pending the outcome of that appeal. After argument and re-argument, the Commonwealth Court was equally divided and affirmed the decision of the Dental Board without opinion on November 22, 1972. We granted allocatur and we now affirm.

Prior to its order suspending appellant's license, the Dental Board held a hearing and arrived at the

following pertinent finding of fact: "Stanley L. Pollock, did employ a Warren Kletzien to perform the administration of inhalation, intravenous anesthetics, removal [of] teeth, and suturing of oral tissue on patients in his office, said Warren Kletzien not being duly licensed as a dentist. . . ." Testimony at the hearing came primarily from appellant and from Dr. Theodore Paladino, a dentist who had been in appellant's employ at the time of the alleged breach of professional conduct. Both men gave testimony which would support the Board's finding although the number of times Kletzien performed such tasks and the amount of supervision he received during their performance was disputed.

Appellant first contends that the method of selecting members to the Dental Board mandated by the Administrative Code of 1929, Act of April 9, P. L. 177, art. IV, §414, 71 P.S. §124 violates the Pennsylvania Constitutional prohibitions against special legislation (Art. III, Sec. 32) and delegation of gubernatorial appointment power (Art. IV, Sec. 8). While conceding the merit of these constitutional arguments,[1] the Attorney General challenges appellant's standing to raise the issue of the legitimacy of the Board's composition in the context of an appeal from a license suspension. We are constrained to agree with the Attorney General that these constitutional objections may not be raised in the procedural posture of this appeal.

The Commonwealth argues that members of the Dental Board are *de facto* officials whose actions are legally binding until they are ousted from office by an action in *quo warranto*. Recognizing that an unlimited right to question collaterally the title to office would impede the orderly operation of government, we have

---

[1] The Pennsylvania Dental Association has filed a brief in support of the constitutionality of Section 414.

ruled that the official acts of one who acts under the color of title to an office should be given the same effect as those of a *de jure* official. "From an early date the appellate courts of this Commonwealth have held steadily to the rule that ' "the acts of public officers *de facto*, coming in by color of title, [whether or not entitled *de jure*], are good so far as respects the public, but void when for their own benefit"; and it is equally well settled that attacks upon the right of such incumbents to serve, must be made by the Commonwealth, in a direct proceeding for that purpose, and cannot be made collaterally': Com. ex rel. v. Snyder, 294 Pa. 555, 559." *Commonwealth ex rel. Palermo v. Pittsburgh,* 339 Pa. 173, 177, 13 A. 2d 24, 26 (1940).

The doctrine springs from an understandable fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question. "If the question [of right to office] may be raised by one private suitor it may be raised by all, and the administration of justice would under such circumstances prove a failure." *Coyle v. Commonwealth,* 104 Pa. 117, 130 (1884). The *de facto* doctrine seeks to protect the public by ensuring the orderly functioning of the government despite technical defects in title to office.

Initially, appellant attempts to avoid the impact of this principle by phrasing his case as an attack on the office itself, not on the right to hold office. We find it difficult to perceive any substantial difference in the semantic distinction urged. It is apparent that appellant is challenging a Board action on the grounds that the individuals then composing the Board were not properly selected. Such a challenge falls squarely within the *de facto* doctrine.

Appellant next argues that the *de facto* doctrine gives precedence to form over substance because it

punishes a litigant for labeling his action as an appeal rather than an action in *quo warranto*. This argument fails to grasp that even if we were to entertain the issue in its present procedural posture, the rationale of the *de facto* doctrine would preclude relief for actions taken by the Board prior to the determination that its members were improperly selected. *Quo warranto*, like an injunction, is addressed to preventing a continued exercise of authority unlawfully asserted rather than to correct what has already been done under that authority. *Johnson v. Manhattan R.R. Co.*, 289 U.S. 479 (1933).

Finally, appellant argues that the *de facto* doctrine should not apply to officials who act as finders of fact. The doctrine has been invoked to insulate a wide variety of official duties,[2] and absent some showing that the alleged defect in the title to office was germane to the issue of the litigation, other than the authority of the officer to act, we can see no reason why the doctrine should not preclude relief in this case. We need not therefore reach the merits of appellant's claim that the Dental Board was improperly selected.

Appellant also raises several challenges to the procedures used by the Board. First, he contends that it violates due process to permit the Board and the Attorney General to combine investigatory, prosecutory, and adjudicatory functions. See, *In re Murchison*, 349 U.S.

---

[2] *United States ex rel. Watkins v. Pennsylvania*, 214 F. Supp. 913 (W.D. Pa. 1963) (state legislators) ; *Pleasant Hills Borough v. Jefferson Twp.*, 359 Pa. 509, 59 A. 2d 697 (1948) (Burgess and Councilman) ; *Commonwealth ex rel. Palermo v. Pittsburgh, supra* (Director, Department of Public Safety) ; *Warner v. Coatesville Borough*, 231 Pa. 141, 80 A. 576 (1911) (councilmen) ; *Coyle v. Commonwealth, supra* (criminal trial judge) ; *Bank of North America v. M'Call*, 4 Binn. 370 (1812) (Foreign court) ; *Commonwealth v. Brownmiller*, 141 Pa. Superior Ct. 107, 14 A. 2d 907 (1940) (special assistant district attorney).

133 (1955); *Gardner v. Repasky,* 434 Pa. 126, 252 A. 2d 704 (1969); *Schlesinger Appeal,* 404 Pa. 584, 172 A. 2d 835 (1961); *Blenko v. Schmeltz,* 362 Pa. 365, 67 A. 2d 99 (1949); *Donnon v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A. 2d 92 (1971). Appellant challenges the Board's participation in the prosecution in that it received Paladino's complaint, investigated it and then issued a citation. Appellant also challenges the role of the Attorney General in drawing up the citation, prosecuting the case before the Board, and aiding the Board in drafting the adjudication.

In passing on this claim, we are mindful of the warning of the United States Supreme Court in *Murchison, supra,* 349 U.S. at 136: "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. . . . This Court has said . . . that 'every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' Tumey v. Ohio, 273 U.S. 510, 532." In applying *Murchison* to a disbarment, this court stated: "[A] predilection to favor one side over the other is not required in order to vitiate a judical proceeding as being violative of due process. Merely, 'a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true' is sufficient. Such 'a possible temptation' was implicit in the proceeding before the prosecutor's own Subcommittee which resulted in appellant's disbarment." *Schlesinger Appeal, supra,* 404 Pa. at 598. Our task, therefore, is to examine the particular procedures em-

ployed in this case to determine whether there was such "a possible temptation" inherent in this administrative structure.

While the record does not indicate the details of the procedures used in prosecuting this case, the Attorney General has summarized them in his brief as follows, and appellant has not substantially challenged that summary in any of his filings. The complaint was received by the Dental Board who requested an investigation by the Law Enforcement Bureau of the Commission of Professional and Occupational Affairs.[3] The Legal Office of that Commission then determined from the investigation that the complaint warranted a hearing and an assistant attorney general in the Legal Office drafted the citation. The Board heard evidence presented by the assistant attorney general and by appellant. After making its decision, the Board received the assistant attorney general's aid in drafting the adjudication.

It is not uncommon for large agencies to fulfill both the prosecutory and judicial functions (e.g., the Federal Trade Commission and the Public Utilities Commission). So long as the functions are separated adequately, Due Process is preserved. See generally, *Pangborn v. C.A.B.*, 311 F. 2d 349, 356 (1st Cir. 1962) and cases cited therein. *A fortiori*, there is no Due Process violation in the administrative structure employed here, where both functions were handled by distinct administrative entities with no direct affiliation to one another. The cases cited by appellant such as *Schlesinger, supra; Gardner, supra;* and *Murchison, supra,* where the same individuals actually participated in

---

[3] The Commission is a distinct administrative entity under the Pennsylvania Department of State. Act of June 3, 1963, P. L. 63, §2, 71 P.S. §62, §279.1 (Supp. 1973-4).

both prosecutory and judicial roles are clearly distinguishable.

In addition to his claim that the administrative structure used here was unfair on its face, appellant attempts to demonstrate actual prejudice by citing an inflammatory letter which the Attorney General was precluded from introducing into evidence at the hearing. He argues that such letter was part of the prosecutor's "file" in this case and was therefore available to the Board. There is nothing in the record to support appellant's claim that Board members had any contact whatsoever with the prosecutor's file. It appears that the letter was not part of the record before the Board and in absence of actual proof that this information had been transmitted to the members of the Board prior to their decision, we will not assume that fact.

As to appellant's objection to the role of the Assistant Attorney General in drafting the Board's order, we note that such assistance came after the Board had reached its decision and the assistant in no way participated in or influenced the decision. Board members are likely to be untrained in the law and, for that reason, the legislature has required the State Department of Justice to review their legal actions. "Before notice of any hearing leading to an adjudication is given, the agency shall submit the matter to its representative in the Department of Justice who shall pass upon the legality of the proposed action or defense. Failure of the agency to submit the matter to the Department of Justice shall not invalidate any adjudication." Administrative Agency Law, Act of June 4, 1945, P. L. 1288, §36, added 1951, Sept. 28, P. L. 1561, §4, 71 P.S. §1710.36. While it would be a better practice to have review of adjudications conducted by an individual who did not participate in the prosecutorial role, we can find no prejudice here where the Board reached its decision independent of and prior to any

assistance from the representative of the Department of Justice. Appellant was not denied Due Process in this regard.

Appellant next contends that the citation he received was so vague as to deny him adequate notice of the charges against him. The citation read as follows: "Stanley L. Pollock, D.D.S., did have a Warren Kletzien in his employ who performed such treatment as administration of inhalation, intravenous anesthetics, removal of teeth, and suturing of oral tissue without being licensed as a dentist;" Notification must be given in a manner reasonably calculated to give a party knowledge of a proposed exercise of jurisdiction and an opportunity to prepare his defense. *Douds v. International Longshoremen's Ass'n,* 241 F. 2d 278, 283 (2d Cir. 1957) ; *Swift & Co. v. United States,* 393 F. 2d 247 (7th Cir. 1968). It is difficult to imagine a citation that could have better informed appellant of the precise acts for which his license was to be challenged. The only missing element was the dates of the acts alleged and appellant requested no bill of particulars to ascertain this information. See, *N.L.R.B. v. Greater N. Y. Broadcasting Corp.,* 147 F. 2d 337, 339 (2d Cir. 1945), cert. denied, 325 U.S. 860.[4]

Appellant next contends that he was denied Due Process because the hearing did not take place until three years after the alleged improper conduct. A major portion of this delay was due to the fact that Dr. Paladino, the complainant, did not see fit to lodge the complaint until January, 1970, after his professional relationship with appellant had terminated. After receiving the complaint, the Board issued a citation on

---

[4] Moreover, there was never a real question as to the dates at issue in the hearing because appellant's attorney was successful in limiting the scope of the hearing to three specific days involving acts performed by Warren Kletzien.

February 22, 1971, and scheduled a hearing in March. The hearing was postponed until June at appellant's request and the adjudication was filed in December of 1971.

We recognize that a procedure to suspend one's professional license is penal in nature[5] and that delay tends to frustrate the just resolution of such matters. However, even in the context of a criminal trial, demonstable prejudice to the accused is a key factor in assessing whether Due Process has been violated. *Barker v. Wingo*, 407 U.S. 514 (1972). While the delay in this case is sufficient to trigger an inquiry into the potential for prejudice to appellant, it appears that appellant has cited no specific examples of prejudice (e.g., dead or missing witnesses or stale recollection by witnesses). While we do not condone a delay of this magnitude, we cannot say that appellant was denied due process because he has alleged no harm that resulted therefrom.

Appellant next asserts that the Board's finding (p. 2, *supra*) fails to support a license suspension under the Dental Law, *supra*. The statute provides for suspension or revocation for ". . . a violation of any of the provisions of this act; or of fraudulent or unlawful practices, or fraudulent, misleading or deceptive representations; or of unprofessional conduct, detrimental or dangerous to the public health, safety, morals or welfare; or of wilful or gross malpractice or neglect; . . ." Dental Law, *supra,* as amended, 63 P.S. §122(i). Appellant does not, nor could he successfully, argue that permitting an unlicensed individual to practice dentistry would not constitute a violation of the act.[6]

---

[5] *State Board of Osteopathic Examiners v. Berberian*, 79 Dauphin 297 (1962), aff'd 200 Pa. Superior Ct. 533, 190 A. 2d 330 (1963).

[6] Such action violates the statute in at least two ways. First, it is a fraud on members of the public who expect and pay for

See, *Pa. State Board of Medical Education v. Ferry,* 172 Pa. Superior Ct. 372, 94 A. 2d 121 (1953). The sole issue then becomes whether there was sufficient evidence to support the Board's finding that appellant permitted Kletzien to practice dentistry.

In this regard, the Board has promulgated Regulation VI permitting a dentist to:

". . . delegate to competent dental auxiliary personnel those procedures for which the dentist exercises direct supervision and full responsibility *except* as follows:

"1.  Those procedures which require professional judgment and skill such as diagnosis and treatment planning and the cutting of hard and/or soft tissues or any intraoral procedure which would lead to the fabrication of an appliance which, when worn by the patient, would come in direct contact with hard or soft tissue and which could result in tissue irritation or injury.

"2.  Those procedures allocated by the Dental Law to registered dental hygienists." (Emphasis added.)

Appellant assumes that the list of non-delegable functions in the regulation is intended to be exhaustive, and he argues that the actions complained of here (removing teeth, suturing, and administering anesthetics) are not on the list. The clear wording of the Regulation indicates that the procedures listed are only intended as examples of procedures requiring professional judgment and skill. Such an interpretation is further supported by a list of hypothetical questions and answers following the Regulation concluding with an address

---

the services of a licensed dentist. Second, the unlicensed practice of dentistry is a crime (Dental Law, *supra*, §10, as amended, 63 P.S. §129) and aiding or abetting such practice would also have been a crime. Penal Code of 1939, Act of June 24, 1939, P. L. 872, as amended 18 P.S. §5105.

from which a licensee can obtain further advice concerning the legality of a particular delegation of authority.

The regulation thus prohibits delegation of *any* procedures requiring professional judgment and skill. In an effort to show that Kletzien's activities did not fall in this category, appellant introduced some evidence that paramedical personnel are capable of safely administering anesthetics, and that Kletzien had done so while in the armed services. The Board found that appellant had permitted Kletzien to practice dentistry and such a finding implies an improper delegation of duties. While the adjudication does not specifically mention Regulation VI, we must assume that the Board's finding was to the effect that the procedures performed by Kletzien required professional judgment and skill.[7] The meaning to be given to terms of art in an agency regulation is particularly within the competence of that agency, see, *W. J. Dillner Transfer Co. v. Penna. P.U.C.,* 175 Pa. Superior Ct. 461, 107 A. 2d 159 (1954) ; appeal dismissed, 349 U.S. 903 (1955) ; *Schuman Co. v. Nelson,* 219 F. 2d 627 (3d Cir. 1955), and it would be a gross over-reaching of our competence and expertise as an appellate court to rule, on this record, that the actions which Kletzien performed were permissible under Regulation VI.

Alternatively, appellant asserts that if his conduct falls within the Regulation, it is an abuse of police power for the State Board to prohibit dentists from

---

[7] Appellant argues that the failure of the Board to explicitly mention the regulation renders their adjudication invalid. The Board made explicit findings of fact and conclusion of law in accordance with the Administration Agency Act, supra, §34, 71 P.S. §1710.34. As we have noted those findings were tantamount to a finding that the Regulation had been violated. We do not find the adjudication deficient in this regard.

hiring qualified paraprofessionals to perform the tasks in question. He argues that there is nothing related to the public health safety or welfare which would prevent a trained technician from performing these tasks. He argues further, that in view of the shortage of trained medical personnel, it is unreasonable to restrict so severely the functions that a dentist can delegate. However, as we have noted, the record is virtually barren of evidence to support such a claim. It is not our function to weigh such technical matters in the abstract. "So long as there is warrant in the record for the judgment of the expert body it must stand. . . . 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'" *Rochester Tel. Corp. v. United States,* 307 U.S. 125, 145 (1939). On this record, we cannot say that this regulation is not reasonably related to the health, welfare and public safety. See, *Harris v. State Board of Optometrical Examiners,* 287 Pa. 531, 135 A. 237 (1926).

Moreover, the regulation does not violate the rule of *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 292 A. 2d 277 (1972). Since it is clear that all procedures involving professional judgment and skill, not just those listed as examples, are nondelegable, the regulation can be distinguished from the statute in *Cohen* which listed thirteen acts "hereby declared to constitute grossly unprofessional conduct of a pharmacist."[8] There, it was admitted that *Cohen* had not performed one of the thirteen acts, and we held that it would be unfair to allow a person to be charged with misconduct for an act not specifically described where the legislative enactment purported to enumerate in detail the type of prohibited conduct.

[8] Act of September 27, 1961, P. L. 1700, §5(a)(9), 63 P.S. §390-5(a)(9).

The standard used in the regulation ("procedures which require professional judgment and skill") when supplemented by the examples, gives the practitioner adequate notice of the nature and quality of procedures that may not be delegated. Unlike the statute in *Cohen,* this regulation lists specific actions only by way of example and does not: ". . . lull the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." 448 Pa. 202 quoting from *Bouie v. City of Columbia,* 378 U.S. 347, 352 (1964). If appellant had been genuinely in doubt as to whether the conduct was prohibited, he could have written the Board as indicated in the explanation accompanying the regulation.

The Order of the Commonwealth Court affirming the Order of the Dental Council and Examining Board is affirmed.

Mr. Justice ROBERTS took no part in the decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I must dissent. The appellant has raised several questions concerning the constitutionality of the statute which establishes the State Dental Board and the Attorney General has conceded that there is merit to the appellant's challenge. The majority, however, improperly concludes that the appellant does not have standing to raise the issue of the statute's constitutionality. The majority's holding, under the rubric of standing, deprives the appellant of due process of law. The rule which gives the same effect to the acts of de facto officials as that given to the acts of de jure officials should apply only in cases where the acts of the de facto officials are final before they are challenged and

the citizen challenging the constitutional authority of the officials has waived his right to raise that issue.

In this case the appellant raised the issue of the statute's unconstitutionality during his hearing before the Dental Board. The Board's actions were thus not final and the appellant did not waive his right to challenge the de jure authority of the Board. The appellant had standing and the constitutional issue raised requires a reversal.