Security Officers Training Academy et al., Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania State Police et al., Respondents.

Argued December 7, 1978, before Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Jay R. Levenberg,* with him *Charles Lang Duncan, Jr.,* for petitioner.

*J. Andrew Smyser,* Deputy Attorney General, with him *Vincent X. Yakowicz,* Solicitor General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE ROGERS, February 2, 1979:

After finding that there were detectives, investigators, watchmen and security guards privately employed in the Commonwealth who carry lethal weapons and that accidents have occurred because of the unfamiliarity of these individuals with the handling of weapons, the General Assembly adopted the Lethal Weapons Training Act[1] with the purpose of providing for the education, training and certification of such persons through a program administered or approved

---

[1] Act of October 10, 1974, P.L. 705, *as amended,* 22 P.S. §41 et seq.

by the Commission of the Pennsylvania State Police. The Act requires the Commissioner of State Police to establish or administer a training program and further that all persons who as an incidence to their employment carry lethal weapons should attend such a program. Section 5(3) of the Act, 22 P.S. §45(3), gives the Commissioner power "To issue certificates of approval to schools approved by [him] and to withdraw certificates of approval from those schools disapproved by [him]." Section 5(4), 22 P.S. §45(4), gives him power "To certify instructors pursuant to the minimum qualifications established by the commissioner." The Commissioner being empowered by Section 5(10), 22 P.S. §45(10), to make rules and regulations reasonably necessary or appropriate to implement his education and training program, promulgated regulations which together with forms for applications and reports, establish detailed standards for the certification of persons desiring to attend training programs, for the certification of schools and of instructors, and for the content of courses required to be given persons seeking qualification as security personnel. These regulations, to be found at 37 Pa. Code §21 et seq., also provide procedures for notification to persons affected by adverse determinations of the Commissioner and for hearings thereon, if desired, before a Hearing Board composed of one commissioned officer of the State Police, one person nominated by the Secretary of Education and a third person nominated by the Secretary of Community Affairs.

The matter presently before us is a petition for review presented by the Security Officers Training Academy calling into question the propriety of an order of the Commissioner of State Police made January 24, 1977 revoking, or in the word of the statute "withdrawing," a certificate issued September 17,

1975 approving the petitioner as a training school for persons desiring to be qualified to handle lethal weapons in their private employment. The Commissioner's action, as the notice provided to the petitioner recorded, was the result of an investigation by the State Police of a complaint concerning a course of instruction called the Basic Course with Firearms given by the petitioner in York, Pennsylvania to employes of Burns International Security Services in October and December 1976. This course was intended to lead to certification of the Burns' students by the Commissioner as qualified to handle firearms. The person who conducted these sessions in behalf of the Security Officers Training Academy was one Elbert M. Saddler, the then so-called Director of the petitioner. Mr. Saddler was not certificated as an instructor in any of the academic subjects required to be successfully completed by the students as a requirement for certification. For this reason, when he went to York and while he was there teaching at both the October and December 1976 sessions, Saddler posed as one John P. Kaze, the former Chief Instructor of Security Officers Training Academy. Mr. Kaze was certified to teach all of the subjects in the Basic Course with Firearms. Purporting to be Kaze, Saddler gave instruction in all of the required courses, including the academic subjects he was not certified as qualified to teach. Reports covering the persons in attendance, the courses taught, the test scores of the students and their successful completion of the courses—documentation necessary for the certification of the students to handle firearms—were sent to the Commissioner of State Police over the signatures of Saddler and one Joseph L. Robinson. Further, although the students had not been instructed in any of the academic subjects by a qualified instructor each was provided with a certifi-

cate signed by Robinson that he had successfully completed the Basic Course with Firearms.

A peculiarity of the case is that the nature of Security Officers Training Academy, as an entity, is nowhere expressly stated in the record. Its assets appear, however, to be the property certainly of Joseph L. Robinson and perhaps of Robinson and other individuals who have provided financing. Robinson is described in this appeal as the president of the Academy and the person who a witness described as "the boss" and identified as the person who signed checks on the Academy's bank account. It is clear that Robinson controlled the enterprise's inadequate funds; that Burns paid Security Officers Training Academy by check the sum of $1077.80 for the October, 1976 session, before it learned of Saddler's imposture; and that Robinson wrote checks against this payment after it was deposited, including several made payable to Saddler.[2]

After hearing this and other evidence the Hearing Board, constituted as hereinbefore described, understandably concluded that the petitioner's certificate to conduct a training school providing the instruction required by the Lethal Weapons Training Act had been properly revoked by the Commissioner and recommended the continuance of this state of affairs. In addition to the violations of the Act committed by Security Officers Training Academy implicit in its conduct, of permitting its Director to give courses which he was not certified to teach while posing as another, qualified

---

[2] An inquiry by the writer of this opinion with the State Bureau of Corporations elicited the information (which is here provided only as a matter of interest) that it has no record of a corporation by the name Security Officers Training Academy but that the name is registered as a Fictitious Name of a business owned by Joseph L. Robinson and one Andrew Johnson.

person, the Hearing Board noted the violation of a regulation promulgated by the Commissioner in the submission for certification of the names of the students who had not been provided with the number of hours of instruction required by the regulation. Other irregularities in the conduct of Security Officers Training Academy with regard to Burns' employes noted by the Hearing Board were the permission given students to take examination papers home for completion and the improper delegation to Burns of the Academy's duty to administer examinations.

The petitioner, which at the hearing stipulated to its Director's misdeeds with respect to the Burns courses, argues that its license should not be revoked because, as we understand its thesis, it was not established by direct evidence that Joseph L. Robinson had actual knowledge of the Director's activities in York. In the first place, it was the Security Officers Training Academy which was licensed, not Mr. Robinson. Further, there is telling circumstantial evidence in support of the inference that Mr. Robinson indeed knew of what was going on in York in the deposit of the Burns' check in the petitioner's bank account and in Robinson's prompt use of most of this balance, much of it going to Saddler whose activities in York produced the money. At the very least, the record reveals Robinson, who by his contention that proof was required of his involvement in the affair at York concedes that his was a dominant role in the petitioner's affairs, was profoundly inattentive to, if not unconcerned with, the proper conduct of the Academy's business. Considering the importance to the safety of others of the competence of persons licensed to carry and use firearms in their employment, the violations of instructional requirements committed by the Security Officers Training Academy, were no mere peccadil-

los. They amply justified the withdrawal of its privilege to teach.

The petitioner in a discursive brief makes a number of attacks on the Lethal Weapons Training Act, the Commissioner's regulations, and the procedures employed by the State agency in this case. None has merit. It first says that its constitutional right to procedural due process was violated by the revocation of its license without affording it a prior evidentiary hearing. In *Matthews v. Eldridge,* 424 U.S. 319 (1976) the United States Supreme Court held that procedural due process did not require the grant of an evidentiary hearing prior to the termination of social security disability payments. The Supreme Court said that the constitutional sufficiency of administrative procedures prior to administrative action requires the consideration of three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of the private interest through the procedures used; and (3) the government's interest. Here, the Commissioner's pre-revocation investigation together with the Commissioner's regulations providing for applications for reconsideration of revocation action and for hearing on the merits sufficiently reduced the risk of an erroneous deprivation of licenses. Further, the requirement of an evidentiary hearing prior to revocation would unduly restrict the government in regulating instruction in the use of lethal weapons, a matter seriously affecting public safety. In short, the procedures here employed provided the appellant procedural due process. *See also Dixon v. Love,* 431 U.S. 105 (1977).

The petitioner next says that the hearing was unfair because two of the members of the Hearing Board were employed by the Commissioner and because two State policemen participated in the trial. We do not

know to which of the three Hearing Board members the petitioner refers. The record shows that only one of the members of the Hearing Board was a member of the State Police Force and that the other two were employes of other departments of State government. As to the participation of State policemen in the hearing, the record shows that the two persons referred to were trained in the law; that one presented the case against the petitioner; and that the other assisted the Hearing Board. Their functions were different in concept and there is not the slightest suggestion that they were not kept different and separate in fact. The hearing was conducted fairly and it had the appearance of being conducted fairly.

Contrary to the petitioner's next assertion, there are ample standards provided by the Lethal Weapons Training Act for the exercise of the Commissioner's power to grant or withdraw licenses to schools desiring to provide the training required by the Act. The subjects to be taught and learned are stated in Section 2, 22 P.S. §42, to be the handling of lethal weapons, knowledge of law enforcement and the protection of rights of citizens. Again in Section 5, 22 P.S. §45, the instruction to be implemented and administered by the Commissioner are stated to be weapons handling, law enforcement and citizens' rights. The Commissioner's regulations to which we have earlier adverted cover licensing of schools and instructors, content of courses and other appropriate details.

Although we find no argument made in the petitioner's brief to the effect that there was here an impermissible commingling in one person of the prosecutive and adjudicative functions in the procedures provided in this case, its counsel at our hearing argued from *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1976). The respondent in its brief effectively dis-

tinguishes that case on the grounds that (1) this is not a court-martial proceedings against an individual employe of the State Police Force where prejudice or bias against an individual is a clear possibility, (2) courts-martial are accusatory and are directed toward an individual whereas the accreditation of a school is clearly administrative, and (3) the advisory board appointed by the Commissioner, condemned in *Dussia v. Barger, supra,* was entirely composed of the Commissioner's subordinates whereas two of the three members of the Hearing Board in this case were from outside the Force. We discern no difference between the procedures here employed and those in other administrative licensing proceedings where investigative and adjudicative functions are combined in one agency which have been approved. *See Withrow v. Larkin,* 421 U.S. 35 (1975) ; *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974).

We therefore affirm the Commissioner's order.

ORDER

AND Now, this 2nd day of February, 1979, the Commissioner's order made January 24, 1977 is affirmed.