660 A.2d 545

IN MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF JOSEPH FICHNER, JR., LICENSE # 6213, TO ENGAGE IN THE PRACTICE OF MASTER PLUMBING IN THE STATE OF NEW JERSEY.

Superior Court of New Jersey
Appellate Division

Submitted December 13, 1994—Argued April 11, 1995—Decided June 23, 1995.

Before Judges LONG, A.M. STEIN and P.G. LEVY.

*W. Peter Ragan* argued the cause for appellant (*Blankenhorn & Ragan*, attorneys; *Mr. Ragan* on the brief and supplemental letter brief).

*Bertram P. Goltz, Jr.,* Deputy Attorney General, argued the cause for respondent Board of Examiners of Master Plumbers (*Deborah T. Poritz,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel, *Mr. Goltz* on the brief and supplemental brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.A.D.

Following a lengthy hearing, the New Jersey State Board of Master Plumbers, by unanimous vote, found that Joseph Fichner, Jr., a licensed master plumber, had engaged in unconscionable overpricing of services performed for seven of his customers, such conduct constituting occupational misconduct and fraud and misrepresentation in violation of *N.J.S.A.* 45:1–21(b) and (e). As to one of the customers, the Board also found that he violated pricing guidelines for licensed plumbers set forth in *N.J.A.C.* 13:32–1.12.

This was the second time that the Board had found Fichner guilty of misconduct charges. In October 1989 the Board found that Fichner had unconscionably overcharged five customers, those prior acts also constituting occupational misconduct and fraud and misrepresentation. In the earlier proceeding, the Board reprimanded Fichner, assessed a civil penalty of $5,000 and required him to make restitution to the five customers whom he had overcharged. We affirmed. *I/M/O Joseph Fichner, Jr.,* A–1571–89T3 (App.Div. March 20, 1991).

This time the Board took more severe action against Fichner. Because of what it understandably considered to be his egregious conduct in continuing to engage in unconscionable commercial practices, the Board: suspended Fichner's master plumber's license for five years, with the suspension stayed contingent upon compliance with all other terms of its order; ordered him to pay a

civil penalty of $5,000 on each of the seven counts for a total of $35,000; required him to pay the State's costs in the amount of $9,844.50; and ordered him to make restitution to the various customers whom he had overcharged. This appeal followed.

The parties filed briefs and the matter was submitted to us for determination without oral argument. The appeal then took on a different dimension, unrelated to the merits of the substantive issues originally raised by Fichner.

█ Fichner's attorney moved to supplement the record. He argued that the decision of the Board must be set aside because several of its members did not have the statutory qualifications to serve on the Board. Fichner claims that he discovered this information while the appeal was pending. We required the Attorney General to provide us with appropriate information as to the qualifications of the Board's members at the time of their appointment. It turned out that Fichner and his attorney were correct. Three of the seven Board members were not statutorily qualified to hold office.

The State Board of Examiners of Master Plumbers consists of nine citizens appointed by the Governor:

> Three members shall be master plumbers of at least 10 years experience, one shall be a local plumbing inspector who has held such appointment for at least 10 years, one shall be a journeyman plumber of at least 10 years experience and 2 shall be representatives of the public having no association with the plumbing industry.
>
> [*N.J.S.A.* 45:14C–3.]

*N.J.S.A.* 45:1–2.2b provides for the appointment of one additional public member to the Board. The ninth member is the head of a department or holder of a designated office of a department in the executive branch appointed by the Governor. *N.J.S.A.* 45:1–2.2c.

There were two vacancies on the Board throughout Fichner's hearings: a Section 14C–3 public member and the Section 2.2c State government member. At the time of Fichner's hearings, the seven members were Mengste Thomas El, Jack Levee and Robert W. Smith, the three master plumber members; Thomas J. Biondi,

the plumbing inspector member; Thomas F. Daly, the journey-man member; Michael D. Landolfi, one of the two public members appointed pursuant to *N.J.S.A.* 45:14C–3; and James P. Kehoe, the Section 2.2b member. The second Section 14C–3 public member, Charles Scheller, participated on the first three hearing dates, was absent from the last two hearings, was also absent from the executive session of May 27, 1993, when the order concerning Fichner was drafted, and had resigned by the date that the final decision and order of the Board was ratified at its public hearing of September 23, 1993.

Three members were not eligible for appointment to the Board:

1. Thomas J. Biondi, the local plumbing inspector member, was licensed by the Department of Community Affairs in April 1985 and was appointed to the Board on February 17, 1989, a period of less than the required ten years of service. The Attorney General concedes that Biondi was ineligible for appointment.

2. Thomas F. Daly, the journeyman member, was appointed to the Board on September 11, 1992. He had been a licensed master plumber since 1978. A "journeyman plumber" means "any person *other than a master plumber* or apprentice plumber ... who works under the supervision of a master plumber." *N.J.S.A.* 45:14C–2(f) (emphasis added). The fact that Daly works under the supervision of other plumbers does not make him a journey-man plumber for the purpose of Board membership. He is a master plumber, not a "person other than a master plumber." The obvious purpose of the statute is to afford a diversified Board membership. The membership of Daly, a licensed master plumb-er, thwarts that purpose.

3. James B. Kehoe, the Section 2.2b public member, was the business representative for Plumbers and Steamfitters Local No. 322, a union hiring hall which places both plumbers and pipe fitters from the South Jersey area. The Attorney General con-cedes that Kehoe was not eligible to fill this public member seat because he cannot meet the statutory qualifications of "hav[ing no]

association or relationship with the profession or a member thereof ... where such·association or relationship would prevent such public member from representing the interest of the public." *N.J.S.A.* 45:1–2.2b.

That left the Board with a composition of four eligible members: El, Levee, Smith and Landolfi; and three ineligible members: Biondi, Daly and Kehoe. Landolfi, one of the four eligible members, did not attend any of the five hearings. He was only present for the executive session of May 27, 1993 when the Board voted to draft a final decision, and at the public meeting of September 23, 1993 when the final decision was ratified.

The Attorney General. argues that the vote of Biondi, Daly and Kehoe should be counted as those of *de facto* officers. The *de facto* officer doctrine allows the actions of all persons who qualify under the doctrine to be as valid as those of the *de jure* officers, so far as the rights of the public and third persons are concerned. *Oliver v. Jersey City,* 63 *N.J.L.* 634, 640, 44 *A.* 709 (E. & A. 1899).

> An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised ... under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.
>
> [*Jersey City v. Dept. of Civil Service,* 57 *N.J.Super.* 13, 27, 153 *A.2d* 757 (App.Div.1959) (quoting *State v. Carroll,* 38 *Conn.* 449, 471–72 (Sup.Ct.Err. 1871)).]

Other jurisdictions have applied the *de facto* principle to uphold the votes of officials who were statutorily ineligible to hold office. *See, e.g., Vance v. Fordham,* 671 *P.*2d 124, 131 (Utah 1983) (board's revocation of osteopath's license upheld where one of three board members did not meet statutory requirements for being licensed as an osteopath for at least five years), *cert. denied,* 465 *U.S.* 1025, 104 *S.Ct.* 1280, 79 *L.Ed.*2d 684 (1984).

The Attorney General relies on the Pennsylvania Supreme Court's ruling in *State Dental Council and Examining Bd. v. Pollock,* 457 *Pa.* 264, 318 *A.*2d 910 (1974). Pollock appealed from

an order of the State Dental Council and Examining Board suspending his dentistry license for thirty days. *Id.* 318 *A.*2d at 912. He contended on appeal that the statutory provisions establishing the method of selecting dental board members violated various provisions of the Pennsylvania state constitution. *Ibid.* The court held that Pollock lacked standing to raise the issue of the legality of the board's composition in the context of an appeal from a license suspension. *Ibid.* There is a difference between a collateral attack in a license suspension proceeding on the constitutionality of the statute authorizing the appointment of the board members and, as here, the claim that the votes of certain members should not be counted because the plain language of the appointing statute disqualified them from holding office. Concededly, the Pennsylvania Supreme Court makes no such distinction:

> Initially, appellant attempts to avoid the impact of this principle by phrasing his case as an attack on the office itself, not on the right to hold office. We find it difficult to perceive any substantial difference in the semantic distinction urged. It is apparent that appellant is challenging a Board action on the grounds that the individuals then composing the Board were not properly selected. Such a challenge falls squarely within the De facto doctrine.
>
> [*Id.* 318 *A.*2d at 913.]
>
> An occupational license is in the nature of a property right ... and thus any deprivation thereof is subject to the protection of due process.
>
> [*Graham v. N.J. Real Estate Com'n,* 217 *N.J.Super.* 130, 135, 524 *A.*2d 1321 (1987).]

Due process requires a fair hearing in every disciplinary proceeding. *In re Suspension of Heller,* 73 *N.J.* 292, 310–11, 374 *A.*2d 1191 (1977); *N.J.S.A.* 52:14B–9. A disciplinary proceeding conducted by a seven-person board which includes three ineligible members and one member who never sat in on any of the hearings is not a fair hearing.

The constituency which each of these ineligible members was appointed to represent is not represented in this quasi-judicial process. It frustrates the legislative purpose when important decisions are made by people who are not statutorily qualified to make those decisions. In a case like this in which the regulation of a highly skilled occupation is not performed by an uninterested

State agency but by a board made up of private citizens, the constituency of the board is crucial. The statute specifically requires the composition of the board to reflect various and quite distinct types of persons affiliated with the plumbing business— master plumbers, a journeyman and a plumbing inspector—whose interests cannot always be reconciled. There are also public members who represent interests outside of this occupation. Together, these members are conceived by the Legislature as constituting the kind of unbiased and at the same time occupationally-oriented group which can render a just decision. The haphazard appointment of so many statutorily unqualified persons to a board performing such important functions displays indifference to the appointment process. This does not deserve the protective gloss of the *de facto* doctrine, "a concept [which] is a product of judicial invention based on considerations of policy and public convenience rather than the dictates of strict logic." *Jersey City v. Dept. of Civil Service, supra,* 57 *N.J.Super.* at 27, 153 *A.*2d 757.

■ The vote of board member Landolfi, an otherwise qualified member, cannot be counted. The hearings were conducted on five separate days: December 17, 1992, January 14, February 9, March 16 and April 28, 1993. Landolfi, who was appointed to the Board after a formal complaint was filed against Fichner, was not present at any of these proceedings.

Of course, a Board member's vote is not necessarily invalidated because he or she failed to attend every single meeting at which the hearing was conducted. He or she may miss a meeting, read a transcript or listen to a recording of the hearing from which he or she was absent, and certify in writing to the Board that he or she has read the transcript or listened to the recording. *See, e.g., N.J.S.A.* 40:55D–10.2:

A member of a municipal agency who was absent for one or more of the meetings at which a hearing was held shall be eligible to vote on the matter upon which the hearing was conducted, notwithstanding his absence from one or more of the meetings; provided, however, that such board member has available to him the transcript or recording of all of the hearing from which he was absent, and certifies

in writing to the board that he has read such transcript or listened to such recording.

There is no certification from Landolfi that he read all the transcripts of those proceedings which he did not attend. This is not the fatal flaw. His absence from every hearing negates his vote. It is one thing to miss a meeting or two and be able to render a fair and impartial decision on the matter. It is quite another to miss every meeting and vote in a case in which the testimony of every lay and expert witness required an evaluation of credibility. No such evaluation could have been made by Landolfi from the cold record. "We must decide whether the agency's finding could reasonably have been reached on sufficient credible evidence in the record, *giving due regard to the fact-finders' opportunity to judge the credibility of witnesses....*" *Phila. Outdoor v. N.J. Expressway Auth.*, 221 *N.J.Super.* 207, 216, 534 *A.*2d 77 (App.Div.1987) (emphasis added), *appeal dismissed*, 114 *N.J.* 470, 555 *A.*2d 598 (1989). We cannot give due deference to the Board's conclusion when one of its fact finders had no opportunity whatsoever to judge the credibility of witnesses in a revocation hearing.

We reject the Attorney General's contention that it is too late in the day for Fichner to be raising questions concerning the statutory eligibility qualifications of Board members. It is not the usual practice for people charged with violations of the law to conduct an immediate investigation of the qualifications of the persons who hear and decide their cases. However, by no means is our holding an invitation to others to reopen Board proceedings previously decided and no longer under appellate review.

The decision of the Board in the Fichner matter fails because there were insufficient votes for passage. "A majority of the voting 'members of [the board] ... shall constitute a quorum thereof and no action of [the board] ... shall be taken except upon the affirmative vote of a majority of the members of the entire board...." *N.J.S.A.* 45:1–2.2. The board which heard Fichner's case consisted of seven voting members. It took four members to constitute a quorum and at least four affirmative votes to consti-

tute a majority of "the entire board" which then consisted of seven members. *Accord, Op. Att'y Gen.* No. 6 (1978).

Finally, because the matter must be remanded for a new hearing, we conclude that the constitutional and *res judicata* arguments raised by appellant are clearly without merit. *R.* 2:11–3(e)(1)(E).

Reversed and remanded to the Board of Examiners of Master Plumbers for a new hearing before a properly constituted quorum. We do not retain jurisdiction.